UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

**MICHAEL C. WORSHAM**              *

  *Plaintiff*              *

vs.              *

          Case 1:20-cv-00008-RDB

**DISCOUNT POWER, INC.**              *

  *Defendant*              *

\* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

  Plaintiff Michael C. Worsham opposes Defendant's Motion to Dismiss the Complaint (ECF 28). The Motion is largely based on an objectively incorrect and improperly introduced Exhibit A used to try to create a 'fact' that Worsham's 410-692-2749 home land line number was used as a business line, and is otherwise not legally supported. The Court has not yet ruled on Worsham's Motion (ECF 31) to Strike the Motion to Dismiss, so Worsham submits this Opposition.  Plaintiff requests a  hearing on the Motion to Dismiss, live or via the internet.

## BACKGROUND

### Plaintiff Michael C. Worsham

  Plaintiff Worsham has lived at his home in Forest Hill, Maryland since 1993, and maintained his residential land line number 410-692-2749 at that address continuously since he first moved there. On July 15, 2006 he entered his land line number into the FCC's National Do Not Call Registry list (hereinafter National DNC list). Complaint at ¶ 1.

  On January 5, 2017 Worsham received a prerecorded voice message ("robocall") from Defendant Discount Power, Inc. ("DPI"), for which Worsham sued DPI in March 2017 in small claims Case #901-1386-2017, District Court of Maryland for Harford County (hereinafter "Suit #1"). Complaint at ¶ 8. A true copy of this March 2017 Complaint is attached as Exhibit 1.  This small claims case (Suit #1) was settled during 2017 prior to trial.

The content of DPI's January 5, 2017 robocall message included the phrase "*This notice concerns a recent letter you received . . .*" regarding an electric rate discount, and also said "*Press 0 to speak to a representative*" followed right away by "*Press 0 to connect*." *See* Exhibit 1 at p. 2, ¶ 8. DPI's first robocall I 2017 did not identify the caller, and after pressing 0 to identify the caller, Worsham was informed that the caller was DPI.  *Id.* at ¶ 11.

**Defendant Discount Power, Inc. (DPI)**

DPI is an electric power provider headquartered in Connecticut that engages in telemarketing solicitations directly or through agents.

As alleged in the Complaint at ¶ 15, in addition to Worsham's Suit #1, DPI was sued at least one more time for making illegal robocalls, on April 27, 2018, in the class action suit *Abramson, et al. v. Discount Power, Inc.*, Case # 3:18-cv-00728 (D. Conn.). The *Abramson* suit alleged that DPI made robocall solicitations to Abramson during March 2018 using spoofed Caller ID which offered a 15% discount on electricity. The *Abramson* Complaint is publicly available on PACER and also at https://www.classaction.org/media/abramson-v-discount-power-inc.pdf.  On January 3, 2019 *Abramson* was dismissed by stipulation, according to the public docket.

**Allegations in Worsham's Complaint**

In this suit Worsham alleges that despite his previous March 2017 TCPA Suit #1 and settlement,  DPI called Worsham's residential land line number 7 times during a five day period during the middle of November 2019.  Complaint at ¶ 9.

Of the 7 calls, Worsham did not answer the first call on November 11, 2019, the next 5 calls were robocall solicitations for electricity, and the last call on November 15, 2019 was a live call from a DPI agent who spoke with Worsham earlier that same day after Worsham

received a robocall and pressed 1 to speak to a live agent. *Id.*  DPI's robocalls messages were:

**Call 2 details:** Call 2 delivered a robocall message in a male voice that said:

> "**Hello. This is an apology call from your electric utility. You got overcharged by your third party supplier. You will be receiving a rebate check along with a 30% discount on your electric and gas bill. Please press one to get your rebate check**."

**Calls 3, 4 and 5 details:** Calls 3-5 all delivered the same robocall message in a female voice:

> "**Hello thank you for being a valued customer of BGE, also known as Baltimore Gas and Electric. The following is an important update regarding your account. Starting this month all current customers who have not missed any payments in the past 6 months will now be eligible for a discount for up to 30% off of their monthly bill. If you would like to check your eligibility, simply press one on your phone now.**"

**Call 6 details:** Call 6 delivered a robocall message in a male voice that said:

> "**Hello. This is an apology call from your electric utility. You got overcharged by your third party supplier. You will be receiving a $100 bill adjustment, along with a 40% discount on your electric and gas bill. Please press 1 to adjust $100 in your bill. Please press 1 now**."

Complaint at ¶ 9. On February 26, 2020 Worsham provided DPI's counsel with audio recordings of all of these robocall messages. On March 2, 2020 Worsham provided counsel with a recording of a more recent post-lawsuit robocall message received on February 22, 2020 to his residential number, which was the same as the robocall message in Call 2 above.

This suit alleges that all 7 of DPI's calls transmitted spoofed (fake) Caller ID, which are identified in the Complaint at ¶ 9. The same Caller ID number 201-285-8284 was transmitted for 5 of DPI's 7 calls. *Id.* at page 5, top (summary list of all 7 calls)[1]. The suit includes other factual allegations, and alleges federal and Maryland TCPA violations arising from those facts. These are detailed as necessary in the discussion of each Count *infra*.

---

[1] Worsham's land line number provider (Armstrong) inserts **SPAM?** into Caller ID for incoming calls if Armstrong's network detects a number thinks is an unsolicited or "spam" call. Worsham's May 19, 2020 Motion to Compel Armstrong (ECF 26) is still pending.

**Exhibit A to DPI's Motion**

Worsham's Motion to Strike (ECF 31) and Reply (ECF 33) already went into much detail about the problems with, and why the Court should strike or else not consider,  DPI's Exhibit A (ECF 28-1), a single page printed on June 6, 2020 from the civil docket for Case #6:18-cv-01692-RBD-LRH (M.D. Fla), *Worsham v. TSS Consulting Group, LLC, et al.* (hereinafter TSS or Florida suit). However some discussion is necessary.

In October 2014 Worsham was disbarred in the State of Maryland. Soon thereafter during 2014 this Court struck Worsham as an attorney who could practice in this Court, a fact the Court can take judicial notice of.  Worsham was not licensed to practice law anywhere by or since 2015, including when he filed the TSS suit in Florida on October 9, 2018.

Worsham believes the Florida court entered the information about Worsham in the Exhibit A docket sheet from a previous suit litigated during 2011-2012, when Worsham still practicing and admitted *pro hac vice* into that same Florida court for a client case.

Exhibit A is an incorrect and unreliable document because this Florida docket sheet associates Worsham with the "Law Office of Micheal C. Worsham" (*sic*), something which did not exist at any time during the Florida suit, or for four years prior to that suit, or when the docket sheet was created. Exhibit A is also internally inconsistent, by identifying Worsham as a PRO SE litigant, but also as LEAD ATTORNEY.

DPI's Motion to Dismiss depends a lot on its erroneous Exhibit A, arguing pointlessly and repeatedly that Worsham's 410-692-2749 number is a business line, and not a residential line. DPI's argument is a factual contention that differs from the Complaint, which states that 410-692-2749 is Worsham's residential land line. *See* Complaint at p. 1, introduction, and at ¶¶ 1, 8. This violates black letter law, which requires in a Motion to Dismiss that the well plead facts are assumed true, and all doubts and inferences are resolved in the pleader's favor.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Worsham did not prepare Exhibit A. However, even if Worsham had identified his 410-692-2749 number as a business line in October 2018, that still would not be dispositive of the status of this number for the robocalls that DPI made over a year later during November 11-15, 2019. The status or characterization of a phone line is a fact issue, if <u>properly</u> raised by a TCPA defendant. This Court can not take judicial notice of the facts about a phone line that DPI is attempting to create and have read into Exhibit A. That would be no more proper than accepting as true the facts in previous lawsuits against DPI just because they are public.

## ARGUMENT

The legal analysis that follows is based on the allegations in the Complaint, and not on the erroneous "business line" facts that DPI improperly based its Motion to Dismiss on.

**1.    Worsham alleged the use of an autodialer (ATDS) and that DPI was the caller**

Some of DPI's motion is nonsense, such as its argument on page 6 (section B) that Worsham failed to allege DPI used an ATDS. The Complaint alleged use of automated dialing equipment in paragraphs 3, 28, 32, 60 and 62.  The descriptions of each call in paragraph 9 also described how Worsham had to press digits in order to get past the automated robocall message in order to speak to a live person, who then identified Discount Power as the caller.

DPI frivolously argues in the same paragraph on page 6 that Worsham provided no factual support that DPI "actually placed the calls to Plaintiff" and that "Plaintiff does not even know 'who' initiated the calls." Paragraph 9 of the Complaint explicitly identified Discount Power as the caller in all calls, except the first call which was not answered, and the second call during which the caller abruptly hung up on Worsham.

**2.    Counts 1 and 5 State a Claim under the federal and Maryland TCPA**

Count 1 under the federal TCPA, and the related Count 5 under the Maryland TCPA,

properly alleged that DPI called Plaintiff's residential number that is on the National DNC list. Defendant' argument about Worsham's residential number is erroneous as already discussed.

**3.     Counts 2 and 6 State a Claim under the federal and Maryland TCPA**

Count 2 under the federal TCPA, and the related Count 6 under the Maryland TCPA, properly alleged a violation of 47 C.F.R. § 64.1200(d)(4) for DPI's failure to implement minimum standards and procedures to provide the required identification of the individual caller, company name, and a contact telephone number or address.

Count 2 (Complaint at ¶ 52) alleges:

Defendant's Calls 1-7 violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(d)(4), which require instituting minimum standards and procedures that "*A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.*"

The unreported case that DPI relies on, *Worsham v. Travel Options, Inc.*, 2016 U.S. Dist. LEXIS 118744 (D. Md. Sep. 2, 2016), was incorrectly decided then, as case law since then further demonstrates. *Travel Options* did not correctly determine that 47 C.F.R. § 64.1200(d)(4) was promulgated pursuant to the FCC's authority in 47 U.S.C. § 227(c), and not the TCPA subsection for technical standards, 47 U.S.C. § 227(d). Plaintiff has a private right of action under 47 U.S.C. § 227(c)(5) for violations of the FCC regulations issued at 47 C.F.R. § 64.1200(d), including the 47 C.F.R. § 64.1200(d)(4) violations as alleged in Count 2 and 5.

The TCPA technical standards for prerecorded voice messages are located at 47 U.S.C. §227(d)(3), and provide in relevant part:

**(3)     Artificial or prerecorded voice systems**

The Commission shall prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone. Such standards shall require that -

(A) all artificial or prerecorded telephone messages

>> (I) shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, and

>> (ii) shall, during or after the message, state clearly the telephone number or address of such business, other entity, or individual; and

> (B) any such system will automatically release the called party's line within 5 seconds of the time notification is transmitted to the system that the called party has hung up, to allow the called party's line to be used to make or receive other calls.

The FCC issued the technical standards which Congress directed in the above subsection of the TCPA at 47 C.F.R. § 64.1200(b). This can be seen easily be comparing the language from the TCPA statute at 47 U.S.C. §227(d)(3) cited above which directs the FCC to implement technical standards, with the FCC's implementing regulation for those standards:

> (b) All artificial or prerecorded voice telephone messages shall:

>> (1) At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated;

>> (2) During or after the message, state clearly the telephone number (other than that of the autodialer or prerecorded message player that placed the call) of such business, other entity, or individual. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges. For telemarketing messages to residential telephone subscribers, such telephone number must permit any individual to make a do-not-call request during regular business hours for the duration of the telemarketing campaign;

47 C.F.R. § 64.1200(b)(1) and (2). These FCC regulations match the Congressional directive in 47 U.S.C. §227(d)(3) in both language, and scope, by covering only artificial or prerecorded voice telephone messages.

The above match between 47 U.S.C. §227(d)(3) (statutory directive) and 47 C.F.R. § 64.1200(b)(1)-(2) (FCC regulations), contrasts sharply with the regulation at 47 C.F.R. §

64.1200(d)(4) at issue in Counts 2 and 5. The provision at 47 C.F.R. § 64.1200(d)(4) applies to all telemarketing calls to residential lines, whether made by a live telemarketing agent or a prerecorded voice message (robocall), whereas the requirements at 47 C.F.R. § 64.1200(b)(1)-(2) do not - they only apply to robocalls. The provision at 47 C.F.R. § 64.1200(d)(4) applies **only** to telemarketing calls to residential lines, whereas 47 C.F.R. § 64.1200(b)(1)-(2) applies more broadly to all artificial or prerecorded voice telephone messages, such as political robocalls, or debt collection robocalls, and 47 C.F.R. § 64.1200(b)(1)-(2) applies more broadly to **any** phone line, not just residential lines.

These points are important, because there is no authority in Congress's technical standard directive in 47 U.S.C. §227(d)(3) for the FCC to issue a technical standard to include what the FCC actually promulgated at 47 C.F.R. § 64.1200(d) and (d)(4). In other words, 47 C.F.R. § 64.1200(d) could not be a technical standard or have been derived from or implemented pursuant to the TCPA's technical standards at 47 U.S.C. §227(d)(3), because 47 U.S.C. §227(d)(3) does not give the FCC authority to implement the regulation at 47 C.F.R. § 64.1200(d) and (d)(4). The FCC implemented 47 C.F.R. § 64.1200(d), including the identification requirements at § 64.1200(d)(4) at issue in Counts 2 and 5, using its authority at 47 U.S.C. § 227(c) for protecting privacy rights, which includes a private right of action.

This was the conclusion very recently in *Barrett v. Vivint, Inc.*, Case # 2:19-cv-00568-DBB-CMR (D. Utah, May 20, 2020). The relevant pages of *Barrett* are attached as Exhibit 2[2]. *Barrett* performed the most careful examination of 47 C.F.R. § 64.1200(d) to date, and framed the issue also presented in the instant case (slip op. at p. 12) as follows:

---

[2] The entire opinion in *Barrett v. Vivint, Inc.* is available at:
https://scholar.google.com/scholar_case?case=7131334202756133328&q=Barrett+v.+Vivint,+Inc.&hl=en&as_sdt=6,39&as_vis=1

In the implementing regulations at issue, the Federal Communications Commission (FCC) provided, "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." The question presented in this case is whether this regulatory requirement flows from TCPA's subsection 227(c), allowing private enforcement actions, or from subsection 227(d), which does not authorize a private right of action.

*Barrett* cited several courts which have ruled in different ways on the issue, and concluded (slip op. at p. 13)[3]:

> For the reasons below, this court is persuaded that the internal do-not-call requirement of 47 C.F.R. § 64.1200(d) derives from the TCPA's directive that the FCC adopt regulations to "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" under 47 U.S.C. § 227(c)(1).

*Barrett* stated its reasoning for its conclusion (slip op. at p. 13-14) (citations omitted):

> First, the plain language of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d) are consistent. 47 C.F.R. § 64.1200(d) proscribes telemarketing calls where the caller has not established procedures regarding an internal do-not-call list. This aligns with 47 U.S.C. § 227(c)(5)'s prohibition of multiple calls from the same entity in any twelve-month period, where that entity has not "established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection." Moreover, Congress specifically directed the FCC in § 227(c)(1)(A) to "compare and evaluate alternative methods and procedures," including "industry-based or company-specific 'do not call' systems," for their efficiency and effectiveness in protecting privacy rights. And the FCC incorporated the company-specific mechanism in §64.1200(d).
>
> Second, the internal do-not-call registry requirement fits the purpose of § 227(c). In addition to the National Do Not Call Registry, the FCC's implementation of company-specific systems preserves residential telephone subscribers' privacy rights by affording them an opportunity to register objections with callers. "Overall, § 64.1200(d), like § 227(c), is concerned principally with the protection of individual privacy rights." The internal do-not-call registry requirement was promulgated under 47 U.S.C. § 227(c) and incorporates a private right of action.

*Barrett* did note that it was possible for 47 C.F.R. § 64.1200(d) to have derived from different provisions of the TCPA, including both 47 U.S.C. § 227(c) and 47 U.S.C. § 227(d),

---

[3] In reaching its conclusion *Barrett* cited *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1200 (M.D. Tenn. 2017) (finding that the "the internal do-not-call procedures of 47 C.F.R. § 64.1200(d) fit cleanly under the rubric of 47 U.S.C. § 227(c)'s general mandate to adopt adequate do-not-call regulations").

but did not find that this precluded a private right of action for violations of 47 C.F.R. § 64.1200(d) .

The balance and trend of the cases cited in *Barrett* are that newer cases tend to find that 47 C.F.R. § 64.1200(d) was derived from 47 U.S.C. § 227(c), in contrast to the findings of somewhat older cases, including *Travel Option*s. Footnotes 78 and 79 of *Barrett* cited six cases reaching this conclusion, whereas footnote 80 cited only four cases with the opposite conclusion. Including *Barrett*, the current majority view by a 7-4 margin is that there is a private right of action for violations of 47 C.F.R. § 64.1200(d) pursuant to 47 U.S.C. § 227(c)[4].

For these reasons, *i.e.*, the specific mismatch between 47 U.S.C. § 227(d)(3) and 47 C.F.R. § 64.1200(d)(4), and the lack of FCC statutory authority for § 64.1200(d)(4) to have come from § 227(d)(3), this Court must conclude that § 64.1200(d)(4) was derived from § 227(c)(1). Since the regulations issued pursuant to § 227(c)(1) have a private right of action under § 227(c)(5), Worsham has a private right of action an claims under Counts 2 and 5.

**4.      Count 3 States a Claim under the federal TCPA**

Count 3 alleges that Defendant's Calls 1-7 violated the TCPA and FCC regulations at 47 C.F.R. § 64.1601(e)(1), which requires that:

> "*Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(7) must transmit caller identification information . . .[and] must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer.*"

DPI again relies on *Travel Options* to argue at page 9 of its Motion that there is no private right of action for violations of 47 C.F.R. § 64.1601(e)(1). DPI is wrong and *Travel Options* was incorrectly decided for several reasons discussed in detail below.

---

[4]  *Travel Options* (at *19) did note that there was a split of authority regarding whether there is a private right of action for violations of 47 C.F.R. § 64.1200(d). Since *Travel Options* was decided, that split now strongly favors and is trending towards recognition of a private right of action as discussed herein.

*Travel Options* first observed (at *11) that it is "not clear whether a violation of § 64.1601(e)(1) falls within the private right of action granted by subsection b or subsection c." Then, despite recognizing that "the FCC's rule in § 64.1601(e)(1) appears to support consumers' enforcement efforts under the TCPA's subsection c," *Travel Options* concluded that § 64.1601(e)(1) did not "create a separate mechanism upon which a consumer can make an actionable claim." *Travel Options* later (at *19-20) then leapfrogged without any discussion or support to the conclusion that "any violation of § 64.1601(e)(1) is a violation of technical and procedural standards under subsection d," which it had earlier concluded had no private right of action.

### There is a private right of action for Caller ID violations of  47 C.F.R. § 64.1601(e)(1)

The basis for TCPA liability for the Caller ID name or number failures requires a close look at the TCPA and some of its history.

Congress created a private right of action for violations of the FCC regulations promulgated pursuant to the TCPA. 47 U.S.C. § 227(b)(3) and § 227(c)(5). The Caller ID requirements in the FCC regulation at 47 C.F.R. § 64.1601(e)(1) was promulgated pursuant to both of these two sections, and applies to both automatically dialed or prerecorded voice calls (aka "robocalls") as well as telemarketing calls from a live sales agent. The FCC has not in general identified which section or sections of the TCPA statute that it uses as its authority to promulgate its TCPA-related regulations.

In 1992, in the FCC's first Report and Order regarding the TCPA, the FCC discussed Caller ID, including possibly requiring a special prefix for telemarketers, but took no action, because the technology was relatively new at the time. However, in its later 2003 Report and Order, the FCC revisited the issue, and implemented the Caller ID requirements for telemarketing calls, and promulgated the following relevant section of its regulations:

**47 C.F.R. § 64.1601 - Delivery requirements and privacy restrictions.**

(e) Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) must transmit caller identification information.

(1) For purposes of this paragraph, caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.

(2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information.

(3) Tax-exempt nonprofit organizations are not required to comply with this paragraph.

68 Federal Register 44179, July 25, 2003. This regulation has been in effect unchanged since 2003. This regulation is clearly related to the TCPA and its primary goal for consumer privacy, by both its regulation of telemarketing, and concern for privacy, as stated in the regulations's very title: "Delivery requirements and **privacy restrictions**" (emphasis added).

The FCC made important points in its 2003 explanation for the need for a new Caller ID requirement: "Caller ID requirements will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers." FCC 2003 Report and Order at ¶ 91. Also, "The Commission has determined to require all sellers and telemarketers to transmit caller ID information, regardless of their calling systems." . . . Caller ID allows consumers to screen out unwanted calls and to identify companies that the wish to ask not to call again. . . Caller ID also should increase accountability and provide an important resource for the FCC and FTC in pursuing enforcement actions against TCPA and TSR violators" *Id*. at ¶ 179 (citation omitted). Since the TCPA is a private attorney general statute, as the instant case demonstrates, Caller ID is directly related to private enforcement. Finally the FCC also pointed out that:

> As explained above, the TCPA seeks primarily to protect subscribers from unrestricted commercial telemarketing calls.  Therefore the Commission has determined not to extend the caller ID requirements to tax-exempt nonprofit organizations.  However, the caller ID rules will apply to all other companies engaged in telemarketing, and the existence of an established relationship between the telemarketer and the consumer shall not be an exception to these rules.  For covered entities, the effective date of the caller ID requirements will be January 29, 2004.

FCC 2003 Report and Order at ¶ 184. Since the Caller ID requirements at 47 C.F.R. § 64.1601(e)(1) were unambiguously promulgated by the FCC pursuant to its authority under the TCPA, and are directly related to the goals and purpose of the TCPA as just discussed, and since the TCPA provides a private right of action for violations of FCC regulations issued under the TCPA, 47 U.S.C. §§ 227(b)(3) and (c)(5), there is therefore a private right of action for violations of at 47 C.F.R. § 64.1601(e)(1).

The FCC's 2003 Report and Order demonstrates that Caller ID requirements were promulgated to aid consumers frustrated by not knowing who called and to aid enforcement of the TCPA. Close examination shows that the FCC considered potential liability created by the then-new requirement and established a clear and convincing evidence burden on callers:

> Caller ID information must include either ANI or CPN and, when available by the telemarketer's carrier, the name of the telemarketer.  If the information required is not passed through to the consumer, through no fault of the telemarketer originating the call, then the telemarketer will not be held liable for failure to comply with the rules. In such a circumstance, the telemarketer must provide clear and convincing evidence that the caller ID information could not be transmitted.

FCC 2003 Report and Order at ¶ 179. The FCC's footnote 653 to the second sentence above showed that the FCC was responding to liability concerns:

> *See* WorldCom Reply Comments at 26 (arguing that requiring caller ID could create an expectation in the minds of consumers that they should always receive the information and that such a regulation creates a situation where companies will be unfairly accused of breaking the law, and as a consequence, face undue litigation and harm to their reputations).

*Id.* at n. 653. The term "liability" is used to refer to the private right of action that a consumer -

referenced in the same sentence, and also in the footnote with respect to consumer litigation -

has for the FCC's rules against telemarketers pursuant to 47 U.S.C. § 227(b)(3) and §

227(c)(5). The promulgation of the FCC's Caller ID regulation in 2003 as a whole indicates

that it was enacted pursuant to the FCC's authority under 47 U.S.C. § 227(b) and § 227(c).

As a remedial consumer protection statute, the TCPA should be liberally construed to

prevent evasion and to effect its remedial purpose. *Hooters of Augusta, Inc. and Sam*

*Nicholson v. American Global Ins. Co.  and Zurich Ins.,* 272 F. Supp. 2d 1365 (S.D. Ga. July,

2003) (concluding after reviewing the TCPA's extensive legislative history that the TCPA is

a remedial statute); *Western Rim Investment Advisors, Inc. et al. v. Gulf Insurance Co.*, 269

F. Supp. 2d 836, 849-850 (N.D. Tex. June, 2003) (TCPA is a remedial statute); *Bernstein v.*

*Am. Family Ins. Co.*, 2004 TCPA Rep. 1268 (Ill. Cir. Feb. 23, 2004) (concluding after

reviewing the legislative findings relative to TCPA that the Congressional purpose in enacting

the TCPA was remedial); *Shumacher Fin. Svcs., Inc. v. Sorokin's Directories, Inc.*, 2004

TCPA Rep. 1264 (Mo. Cir. 2004) (TCPA, like the Truth In Lending Act, is a remedial

consumer protection statute that should be construed liberally in favor of the consumer);

*Harjoe v. Prime TV, LLC* , 2004 TCPA Rep. 1278 (Mo. Cir. Jan 22, 2004) (TCPA as a

remedial consumer protection statute should be construed liberally in favor of the consumer);

*Jemiola v. XYZ Corp.*, 802 N.E.2d 745, 126 Ohio Misc. 2d. 168, 2003 TCPA Rep. 1252 (Ohio

C.P. Dec. 11, 2003) (as a remedial law the TCPA should be liberally construed to protect the

rights and interests of the plaintiff and the general public); *Harjoe v. Colonial Life & Accident*

*Insurance Company*, 2002 TCPA Rep. 1065 (Mo. Cir. Aug 29, 2002) (concluding in a TCPA

case that remedial statutes should be liberally construed and interpreted (when that is possible)

in a manner tending to discourage attempted evasions by wrongdoers); *Schraut v. Rocky*

*Mountain Reclamation*, 2001 TCPA Rep. 1182 (Mo. Cir. Dec. 18, 2001) (TCPA is a remedial

consumer protection statute).

One of the best ways to effectuate the TCPA's purpose is through private enforcement. That is why the TCPA includes two separate private enforcement sections at § 227(b)(3) and § 227(c)(5). The FCC's 2003 Report and Order made clear that the Caller ID rule was promulgated to enhance enforcement. This and the liberal construction afforded to the TCPA, coupled with the FCC's directly addressing liability to consumers as a possibility arising from its then-new Caller ID rule (discussed *supra*), and the observation that the FCC passed the Caller ID rule for <u>all</u> types of telemarketing calls, and not just for the narrower scope of prerecorded calls covered in the TCPA's technical standards section (§ 227(d)), dictates the conclusion that the correct construction of the TCPA and FCC's Caller ID rule at § 64.1601(e)(1) is that private enforcement is permissible through the private rights of action at both § 227(b)(3) and § 227(c)(5).

## <u>§ 64.1601(e)(1) could not come from the TCPA's technical standards subsection § 227(d)</u>

It is important to understand that 47 U.S.C. § 64.1601(e)(1) was promulgated pursuant to the FCC's authority under 47 U.S.C. § 227(b) and § 227(c). But it is also important to understand that § 64.1601(e)(1) could not have been promulgated pursuant to 47 U.S.C. § 227(d), the technical standards subsection of the TCPA, because it provides no statutory authority for the FCC to issue regulations of any kind for either (1) live telemarketing calls, or (2) Caller ID.

The FCC's Caller ID rule at § 64.1601(e)(1) could not have come from the TCPA's technical standards subsection at § 227(d), as *Travel Options* incorrectly concluded, because there is no statutory authority in § 227(d) for the FCC rule. The technical standards only apply to telephone fax machines (which are not at issue here) and to artificial or prerecorded voice systems. The technical standards do not, and can not, apply to live telemarketing solicitation

calls, such as DPI's Call 7 on November 15, 2019 as alleged in the Complaint at ¶ 9.

The FCC regulation at § 64.1601(e)(1) applies to "Any person or entity that engages in telemarketing . . ." which includes live telemarketing solicitations. Since the technical standards at § 227(d) can not and do not apply live telemarketing solicitations, the technical standards could not have been the source of the FCC authority to promulgate § 64.1601(e)(1).

Additionally, § 227(d) does not provide the FCC with authority to promulgate regulations related to Caller ID, even for artificial or prerecorded voice messages. The FCC authority in § 227(d) for prerecorded voice messages is at § 227(d)(3). That authority is specifically limited to regulations requiring identification of and the telephone number or address of the caller, and requirements to automatically release the phone line within 5 seconds after the called party has hung up. Congress was specific about the technical standards it required, and Caller ID was not included among them.

This is logical, since in 1991 when the TCPA was first passed, Caller ID was not known or as available as it is now, and even less so in the years of debate leading up to the TCPA's actual passage in 1991. Also, and importantly, from a technical standpoint, Caller ID transmission is accomplished through a separate system or equipment from the system or equipment that delivers an artificial or prerecorded voice.

Defendant's calls all failed to transmit a name via Caller ID, and possibly a proper number as well, in violation of 47 C.F.R. § 64.1601(e)(1). Therefore Count 3 states a claim.

Worsham recognizes that there is no private right of action for Count 7 under the Maryland TCPA for the same underlying substantive conduct related to Caller ID, because the private right of action in the Maryland TCPA is limited to violations of the FCC regulations at 47 C.F.R. § 64.1200, and does not extend to or cover violations of 47 C.F.R. § 64.1601(e). It is proper to dismiss Count 7.

16

**5.      Counts 4 and 8 State a Claim under the federal TCPA and Maryland TCPA**

Count 4 alleges that Defendant's Calls 1-6 violated the TCPA at 47 U.S.C. §

227(b)(1)(B), and a similar FCC regulation at 47 C.F.R. § 64.1200(a)(3), which provides that:

> "§ 227(b)(1)(B) - *Prohibitions: It shall be unlawful for any person . . .(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission."*

In Call 1, Worsham did not answer, and the caller, presumably DPI, failed to leave a

message with any identifying information as required. Call 1 is presumably a robocall initiated

by DPI for several reasons. First, the Caller ID transmitted in Call 1 was the same exact Caller

ID number 201-285-8284 that was transmitted in Calls 3, 4, 5 and 7 made just days after Call

1. Second, during those same Calls 3, 4, 5 and 7, Discount Power was specifically identified

as the caller by the sales agents. Third, during three of these calls (Calls 3, 4 and 5) a robocall

message was delivered. Fourth, during Call 4, DPI's agent gave Worsham their customer

service number, 877-334-0097, which as of today (July 16, 2020) answers as Discount Power.

To prove a violation § 227(b)(1)(B) requires only proof that the caller "initiate" the

prohibited call, which was clearly done since Call 1 reached and connected to Worsham's land

line number. This provision of the TCPA protects residential privacy by stopping a would be

caller from even initiating a call, and not calling and then hanging up or failing to identify the

caller, as occurred in Call 1, which is well known as an annoying invasion of privacy.

The word 'initiate' in § 227(b)(1)(B) is distinguished from the word "make" in §

227(b)(1)(A), which also restricts artificial or prerecorded voice calls to other types of phone

lines or numbers.  A call like Call 1 which was definitely initiated by the caller, might not be

said to have been 'made' by the caller, if the caller hung up as occurred here such that a call

was not 'made' in common understanding, but this question is not before the Court since §

227(b)(1)(A) is not at issue or alleged in this suit.

For Calls 2 to 6, the transmitted Caller ID and robocall message content was provided both herein *supra* and in ¶ 9 of the Complaint. Worsham also alleged that 410-692-2749 is his residential number, and that he did not give his prior express permission to be called. Complaint at ¶1, ¶ 8 (residential line), ¶ 9 and ¶ 29 (no permission or consent given). Calls 2 and 6 both transmitted locally spoofed Caller ID numbers (410-692-xxxx is the local exchange for Worsham's 410-692-2749 residential number, and both delivered a robocall message for discount electric power, the first half of which was identical in both calls, stating falsely: "**Hello. This is an apology call from your electric utility. You got overcharged by your third party supplier.** . . ". Calls 2, 3, 4, 5 all contained robocall messages offering the same 30% discount on electric power rates and urging the recipient to press 1.  Worsham spoke with who appears to be the same sales agent of DPI named Joselyn in Calls 3, 4, 5, and 7, who identified Discount Power during those calls.

In summary, DPI is tied and linked to Calls 1-7 (which includes Calls 1-6 which are at issue in Count 4) several ways: Directly by Discount Power being specifically identified (Calls 3 to 7), by the same sales agent Joselyn (Calls 3, 4, 5, and 7), by identical robocall messages (Calls 3, 4, and 5), by the same 30% discount offer (Calls 2, 3, 4, and 5), by the same exact transmitted Caller ID number 201-285-8284 (Calls 1, 3, 4, 5, 7), and by partially identical messages and the use of locally spoofed numbers transmitted (Calls 2 and 6).

These allegations together properly plead a claim for a violation of U.S.C. § 227(b)(1)(B) for Calls 2-6. This is true even without invoking the *Twombly* standard which requires the Court to assume that the well plead facts are true, and to resolve all doubts and inferences in the pleader's favor. *Bell Atlantic Corp.*, 550 U.S. at 555 (2007). Accordingly, Count 4 states a claim for Calls 1-6 for violations of § 227(b)(1)(B) for initiating a prerecorded

voice message call without prior express consent.

Defendant's arguments at p. 10-11 of its Motion are frivolous and/or irrelevant. Worsham did not publish his law firm/business telephone number to the world, as discussed *supra*, and could not possibly have even done so since he was not then and is not licensed to practice law. Even he had, simply publishing a number does not constitute prior express consent to be called, much less repeatedly by illegal robocalls with incomplete or spoofed Caller ID.  Whether DPI used an ATDS to call Worsham is completely irrelevant, as use of an ATDS is not an element of a claim under § 227(b)(1)(B).

DPI's final argument at p. 11 that Worsham "appears to bait the callers" with the Defendant's name Discount Power appears to be a knowing misrepresentation to the Court. DPI and its counsel have had audio recordings of the six calls (Calls 2-7) for which recordings exist for several months since February 26, 2020. They are aware by hearing first hand that Worsham did not bait anyone. They also heard in Call 4 their own agent ("Joselyn") voluntarily give Worsham Discount Power's current customer service number, 877-334-0097, which they know is DPI's number, but which is unlisted and which Worsham could not have known.  The Court can judicial notice that BG&E is the primary electricity provider in central Maryland, and that BG&E is a responsible utility that does not repeatedly make misleading "apology" robocall solicitations for discounted electric rates (as opposed to BG&E's permitted power outage or emergency related robocalls), or else the Court's docket would surely reflect TCPA lawsuits against BG&E.

**6.     Counts 9, 10 and 11 State Claims under the Maryland TCPA**

Counts 9-11 allege violations of the Maryland TCPA arising from violations of the FCC's regulations. Complaint at ¶¶ 60-62.

The underlying FCC regulations allegedly violated are the failure to: "provide an

automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request", in violation of 47 C.F.R. § 64.1200(b)(1) (Count 9), "At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call" (Count 10), and " During or after the message, state clearly the telephone number . . . of such business, other entity, or individual" (Count 11).

The Complaint at 9 provided a verbatim transcript of each of the robocall messages in Calls 2 through 6. This message content reveals that the required information and opt out mechanism were missing, and lays the necessary factual predicate for pleading the violations in Counts 9-11 summarized above. The Maryland TCPA creates a private right of action for violations of the FCC's regulations at 47 C.F.R. § 64.1200, which is 47 C.F.R. Part 64, Subpart L. Maryland Commercial Law Art. (CL), § 14-3202(b). It also explicitly provides that "each prohibited telephone solicitation and each prohibited practice during a telephone solicitation is a separate violation." *Id.* at § 14-3202(c).

Accordingly the Complaint states a claim for relief in Counts 9, 10, and 11.

Defendant's Motion erroneously confuses a private right of action under the federal TCPA, with the separate private right of action under the Maryland TCPA. There may be no private right of action under the federal TCPA for violations of 47 C.F.R. § 64.1200(b)(1)-(3). But that is irrelevant under the Maryland TCPA, because it explicitly creates a private right of action for each prohibited practice during a telephone solicitation as a separate violation. Maryland TCPA at § 14-3202(c). If conduct violates an FCC regulation, the Maryland TCPA provides its own private right of action, regardless of whether the federal TCPA also does.

Defendant's final argument at p. 13 (top) that "Plaintiff's own allegations show that the calls were made for BGE" is patently frivolous. First, only three of the seven calls, Calls 3, 4 and 5, even include BGE. Second, the message in Calls 3, 4 and 5 don't state that they

were made for BG&E, but rather, mention BGE in carefully worded phrases to mislead the call

recipient to believe the call is from BG&E. Third, during Calls 3, 4 and 5, when Worsham

pressed 1 to speak to a live agent, he was told in all three calls, and by the same agent of DPI

named Joselyn, that the caller was Discount Power, all of which is explicitly stated in the

allegation summary for Calls 3, 4 and 5. Fourth, the Complaint explains that during Call 3, the

first of four calls during which Worsham spoke with the same DPI agent named Joselyn, that

Joselyn "avoided identifying the company, and I had to ask her several times to get her to

finally tell me the company were Discount Power." Complaint at ¶ 9. This was emphasized

two paragraphs later in the allegation at ¶ 11 that "Defendant instructs its agents, employees

and/or contractors to avoid identifying Defendant, and that if asked to identify Defendant

to respond that Defendant is the "state licensed supplier for BG&E" or similar term that

fails to identify Defendant."

For these reasons, DPI's Motion to dismiss Counts 9, 10, and 11 should be denied.

**7.     Counts 12 to 17 State Claims under the Maryland TCPA for FTC TSR Violations**

Defendant's main argument to dismiss Counts 12-17 is that a cause of action does not

exist under the Maryland TCPA for violations of the Federal Trade Commission's (FTC's)

Telemarketing Sales Rule (TSR).  Defendant is incorrect.

Defendant admits at p. 14 of its Motion that the issue of a whether there is a private

right of action under the Maryland TCPA for FTC violations was not addressed in the main

case it relies on, *Worsham v. Ehrlich*, 181 Md. App. 711 (2004). Defendant cites a 2012 case

that adopted *Ehrlich*, discusses an irrelevant $50,000 damages threshold in the FTC's TSR,

and then jumps to the unsupported conclusion that allowing such a private right would be "in

clear contravention of *Ehrlich*," despite admitting *Ehrlich* never even considered this issue.

*Ehrlich* involved political robocalls, not telemarketing solicitation robocalls. Political

robocalls are treated differently under the TCPA. *Ehrlich* concluded there was no private right of action for the robocalls at issue in that case because of the political nature of those calls. *Ehrlich* never even considered the FTC's TSR which is alleged here in Counts 12-17. Thus *Ehrlich* is not relevant and provides no support for dismissing Counts 12-17. Further, *Ehrlich* is a 2008 case and contrary to the trend of more recent cases which recognize a private right of action for FCC violations discussed *supra*.

The Maryland legislature specifically created a cause of action for FTC TSR violations in CL § 14-3201(1). This is separate and distinct from the cause of action it created for TCPA and FCC violations at CL § 14-3201(2). *Ehrlich's* conclusion that there was no Maryland cause of action for violations of the TCPA was incorrect, but even if it was correct, its stated reasoning does not apply to the FTC's TSR.

*Ehrlich* looked to legislative intent, which is incorrect since the Maryland TCPA is clear and unambiguous. *Ehrlich* then incorrectly concluded there was no private right of action, based on both its unwarranted consideration of legislative intent and a very flawed misunderstanding of the TCPA's preemption subsection. *Ehrlich* concluded that the Maryland TCPA creates a more stringent standard than the federal TCPA, which is incorrect because the Maryland TCPA adopts the same exact standards of the federal TCPA, and creates no new restrictions. CL § 14-3201(2). *Ehrlich* then incorrectly concluded that the Maryland legislature could not create a private right of action, because 47 U.S.C. § 227(e) "makes it clear that states can not create a private right of action under subsection (d)." *Ehrlich*, 181 Md. App. at 731. As thoroughly flawed as *Ehrlich* was, its reasoning only applied to the federal TCPA, and not to the FTC's TSR.  The Maryland TCPA very clearly and unambiguously created a private right of action for violations of the FTC's TSR at CL § 14-3202(b). However, the Court may wish to certify this issue to the Maryland Court of Appeals, which is empowered to accept

questions of law under the Maryland Courts and Judicial Proceedings Art., § 12-603.

Defendant's other arguments to dismiss Counts 12-17 on page 16 are mostly repetitions of its frivolous arguments that Worsham did not plead any or sufficient facts to support the respective claims. It appears that Defendant expects every fact alleged earlier in a Complaint to be re-alleged later when violations are alleged in formal Counts. This is not required, or likely even allowed under FRCP 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."

Regarding Count 16, the Complaint for Count 1 describes how and alleges that all 7 calls were made to Worsham's number on the National DNC list, in violation of 47 C.F.R. § 64.1200(c)(2). These factual allegations of Defendant's repeated calls to his number on the DNC list for Count 1 are also adequate to plead in Count 16 that the same Defendant failed to pay the FTC's fee for "*telephone numbers within that area code that are included in the National Do Not Call Registry*" in violation of 16 C.F.R. § 310.8(a). It is logical and reasonable to infer and allege that if a telemarketer illegally called the same number on the DNC list multiple (7) times, as well as previously as Worsham alleged in his first suit against DPI in 2017 (*see* Exhibit 1 at ¶ 45), then that same Defendant did so because they failed to pay the FTC for the numbers in that area code, and did not know Plaintiff's number was on the DNC list and should not be called. The other unreasonable inference is that the Defendant did pay the FTC for the DNC number list of numbers not to call, but then called those numbers anyway, and thereby risked TCPA liability. *Twombly* prohibits making this unreasonable inference. Count 16 is plead adequately when considered with all reasonable inferences.

The Court should consider that *Travel Options* was decided against a defendant in default, without any discovery. Worsham should be allowed discovery to learn whether DPI or its agents paid the required fee to the FTC, in order bring Count 16 fully to issue. The same

can be said for several other claims that *Travel Options* similarly decided in a discovery vacuum, and which Worsham has alleged in the instant suit, such as alleged willful conduct.

There is one legitimate argument on pages 16-17 regarding Count 17. It arises only because Worsham inadvertently included Call 1 in Count 17, which alleges an FTC violation for "*Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution.*" Complaint at ¶68. Since there was no message or conversation in Call 1, there can be no claim for this specific FTC violation. Worsham agrees that dismissal of Count 17 <u>for Call 1 only</u> is appropriate.

Worsham points out for Call 6 that he specifically alleged that "Plaintiff alleges that Defendant's "$100 bill adjustment" claim and message was false." Complaint at ¶ 9. Also, a reasonable inference to draw is that DPI's misleading and false references to BGE in robocalls 3, 4 and 5 violated the FTC provision cited above, which supports the claims in Count 17.

8.    **Plaintiff Adequately Plead Defendant's Willful and Knowing Conduct, and May Be Entitled to Treble Damages**

Defendant's arguments on page 17-18 that Plaintiff did not plead or allege any facts supporting treble damages are frivolous. More than adequate facts are alleged throughout the Complaint, not just in paragraphs 40-50 that Defendant choose to isolate from the rest of the Complaint and attack, to demonstrate that DPI's conduct was deliberate and intentional, and not merely inadvertent.

Perhaps first among these is the allegation in ¶ 8 that Worsham already sued DPI in 2017, which made DPI aware of the TCPA and the deficiencies in its practices, and makes for strong evidence that any violations, if proven here, are a result of willful or knowing conduct.

The term '*willful*' is cited in the Complaint at ¶ 49 within the allegation that DPI's violations were done willfully or knowingly. The term is defined at 47 U.S.C. § 312(f)(1) as:

(1) The term "*willful*", when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation of the Commission authorized by this chapter or by a treaty ratified by the United States.

Under this definition it does not matter whether or not DPI intended to violate the TCPA or its regulations. It only matters that it acted consciously and deliberately, as opposed to inadvertently or mistakenly. The allegations of repeated illegal calls raises a presumption of *willful* conduct under this definition, because whereas a Defendant might have a possible explanation for one errant illegal call as being unintentional or not deliberate, that can not be true for the multiple robocalls containing multiple violations and much of the same illegal conduct alleged in the Complaint at ¶ 9.

### 9.    Plaintiff May Be Entitled to Attorney's Fees if He Hires Counsel

It is correct that Plaintiff is not currently entitled to attorney's fees as a *pro se*. That is why page 13 of the Complaint seeks fees "as *may* apply pursuant to CL § 14-3202(b)(1)" (emphasis added), meaning, if Worsham decides to obtain counsel later in this litigation.

WHEREFORE the Court should deny Defendant's Motion to Dismiss the Complaint, except for dismissing Count 7, and Call 1 only in Count 17. A proposed Order is provided.

Respectfully submitted,

/s/ Michael C. Worsham

Michael C. Worsham, Plaintiff, *Pro Se*
1916 Cosner Road
Forest Hill, Maryland 21050
410-557-6192
michael @ magicmichael.net

### CERTIFICATE OF SERVICE

On July 16, 2020 this document was filed for service through the Court's ECF system.

/s/ Michael C. Worsham

Michael C. Worsham