**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

**MICHAEL C. WORSHAM** *

*Plaintiff* *

vs. *

**DISCOUNT POWER, INC.** * Case 1:20-cv-00008-RDB

*Defendant* *

* * * * * * * * * * * * *

# AMENDED COMPLAINT

The Plaintiff, Michael C. Worsham, sues the Defendant Discount Power, Inc. ("DPI") for federal and Maryland TCPA telemarketing violations, for an ongoing civil conspiracy to initiate and deliver telemarketing solicitation calls to Plaintiff's residential telephone number on the National Do Not Call (DNC) list registry, to advertise and sell energy products and services.

DPI's telemarketing calls and practices include illegal and criminal telemarketing robocalls which transmit false and/or spoofed Caller ID names and numbers, fail to identify the individual caller and calling company, and fail to provide a phone number or address.

In 2017 Worsham previously sued DPI in Harford County District Court Case #901-1386-2017 for a similar illegal robocall telemarketing message, and settled this case in July 2017, and DPI agreed as a condition of settlement not to call Worsham again.

## PARTIES

1. Plaintiff **Michael C. Worsham** is a resident of Harford County, Maryland, and subscriber to his residential land line number 410-692-2749 at all times relevant to this suit, which has been on the National Do Not Call (DNC) list registry since July 15, 2006, and used by Worsham for his personal use as a residential line, and was not used as a business line.

2. Defendant **DISCOUNT POWER, INC. (DPI)** is a Connecticut for-profit corporation with its main office in Shelton, CT, and is registered in Maryland with corporate business ID #F14705263. DPI engages in telemarketing by itself and/or through others to obtain new customers.

## ALLEGATIONS

### Defendant's telemarketing practices

3. Defendant either by itself or in concert with a telemarketer and/or other persons or entities, engages in a civil conspiracy to call consumers, including at numbers on the National Do Not Call (DNC) list Registry, using an automatic telephone dialing system (ATDS), to initiate, make, and deliver telemarketing calls for the purpose of soliciting people to Defendant's buy energy products and/or services.

4. Defendant makes and initiate calls with or through a call center using people who have non-English accents who give aliases who claim they are selling discounted electricity.

5. Defendant's call center intentionally transmits Caller ID information with spoofed or false numbers, and false/spoofed and/or no name information, in the telemarketing calls.

6. Defendant's telemarketing messages intentionally do not identify the company, the individual caller, or a company phone number or address.

### Worsham's first Telephone Consumer Protection Act (TCPA) suit in 2017

7. Defendant called Plaintiff's residential number 410-692-2749 on January 5, 2017, and for this Worsham sued in Harford County Case #901-1386-2017, which settled in July 2017.

8. Defendant's January 5, 2017 call delivered a prerecorded voice message in a somewhat tense or hurried woman's voice, and started out saying: "*This notice concerns a recent letter you received . . .*" regarding an electric rate discount, and said something else about rates or electricity, and then said *"Press 0 to speak to a representative,"* followed right away by "*Press 0 to connect*."

9. Defendant's January 5, 2017 prerecorded message provided no phone number or identifying names, and transmitted "410-844-4217 Power Center" as a Caller ID.

10. Worsham pressed 0 during Defendant's January 5, 2017 call, and eventually got to a live sales agent, who identified the caller as Discount Power.

11. According the 800notes.com complaint site, other persons in December 2016 also received a solicitation call similar to the one Worsham received on January 5, 2017 from the same Caller, and at another 800notes.com site several complaints were made during 2014 of similar calls and messages from "Power Center" selling discount electricity.

12. As a result of the 2017 lawsuit, Defendant was aware of the TCPA, and of problems with its telemarketers' TCPA compliance regarding prerecorded voice messages, identification failures, Caller ID failures, and was aware that its telemarketers were calling numbers on the national Do Not Call (DNC) list, were using prerecorded voice messages, and were transmitted false or misleading Caller ID, and knew which telemarketer call on 1/5/2017.

13. DPI was sued at least one other time for making illegal robocalls, on April 27, 2018, in the class action suit *Abramson, et al. v. Discount Power, Inc.*, Case # 3:18-cv-00728 (D. Conn.). The *Abramson* suit alleged that DPI made robocall solicitations to Abramson during March 2018 using spoofed Caller ID which offered a 15% discount on electricity.

14. As a result of Worsham's 2017 suit, and the 2018 *Abramson* suit, DPI had to know that its telemarketers were using robocalls and not complying with the TCPA.

**<u>Defendant's November 2019 calls to Plaintiff</u>**

15. Plaintiff alleges he received the following new telemarketing solicitation robocall messages calls without his permission or consent by or on behalf of Defendant:

| **Call #** | **Date of Call** | **Time of Call** | **Number called** | **Number and Name on Caller ID** |
|---|---|---|---|---|
| **1.** | **Nov. 11, 2019** | **10:50 AM** | **410-692-2749** | **201-285-8284 / Bayonne NJ** |

**<u>Call 1 details</u>:** I did not answer the phone. No message was left.

| | | | | |
|---|---|---|---|---|
| **2.** | **Nov. 11, 2019** | **5:37 PM** | **410-692-2749** | **410-692-7576 / Jarrettsvl MD** |

**<u>Call 2 details</u>:** Call 2 delivered a robocall message in a male voice that said:

"**Hello. This is an apology call from your electric utility. You got overcharged by your third party supplier. You will be receiving a rebate check along with a 30% discount on your electric and gas bill. Please press one to get your rebate check**."

I pressed 1, and a man with an accent came on the line and said he was "Ryan." I said that I got a call about some kind of a refund, but he hung up without explaining anything and the call disconnected. He never identified the company or gave a phone number.

| | | | | |
|---|---|---|---|---|
| **3.** | **Nov. 12, 2019** | **1:49 PM** | **410-692-2749** | **201-285-8284 / Bayonne NJ** |

**<u>Call 3 details</u>:** Call 3 delivered a robocall message in a female voice that said:

"**Hello thank you for being a valued customer of BGE, also known as Baltimore Gas and Electric. The following is an important update regarding your account. Starting this month all current customers who have not missed any payments in the past 6 months will now be eligible for a discount for up to 30% off of their monthly bill. If you would like to check your eligibility, simply press one on your phone now.**"

I pressed 1, and a woman with noticeable accent, possibly Asian, came on the line and said her name was something that sounded like "*Joselyn*". She avoided identifying the company, and I had to ask her several times to get her to finally tell me the company were **Discount Power**. I told her not to call a few times, and hung up.

| Call # | Date of Call | Time of Call | Number called | Number and Name on Caller ID |
|---|---|---|---|---|
| **4.** | **Nov. 14, 2019** | **1:23 PM** | **410-692-2749** | **201-285-8284 / SPAM? Bayonne N** |

**<u>Call 4 details</u>:** Call 4 delivered a robocall message in a female voice that said:

**"Hello thank you for being a valued customer of BGE, also known as Baltimore Gas and Electric. The following is an important update regarding your account. Starting this month all current customers who have not missed any payments in the past 6 months will now be eligible for a discount for up to 30% off of their monthly bill. If you would like to check your eligibility, simply press one on your phone now."**

I pressed 1, and the same woman with an accent came on the line and said her name was "*Joselyn*". She knew and stated my last name, and street address. She asked a question about my electric bill, and then asked me to get a copy of my electric bill. I told her I could not do that right now. She then asked for my electric choice ID number, and asked for the last 4 digits of my social security number. I then asked what company was calling, and she answered that it was **Discount Power**. I asked for a phone number so I could call them back. She gave me their customer service number, **877-334-0097**, and said she is in the sales department and does not have a direct call back number. I said I'd call customer service, and said good bye.

| | | | | |
|---|---|---|---|---|
| **5.** | **Nov. 15, 2019** | **12:01 PM** | **410-692-2749** | **201-285-8284 / SPAM? Bayonne N** |

**<u>Call 5 details</u>:** Call 5 delivered a robocall message in a female voice that said:

**"Hello thank you for being a valued customer of BGE, also known as Baltimore Gas and Electric. The following is an important update regarding your account. Starting this month all current customers who have not missed any payments in the past 6 months will now be eligible for a discount for up to 30% off of their monthly bill. If you would like to check your eligibility, simply press one on your phone now."**

I pressed 1, and the same woman with an accent came on the line and said her name was "*Joselyn*". She knew and stated my last name, and street address. She asked a question about my electric bill, and then asked me to get a copy of my electric bill. I then asked her if this was **Discount Power**. She said yes. I said they are in Connecticut, and I am in MD. She said that they could provide me a new rate in MD, and said that their headquarters was in CT. I said I would like to call back later because I could not speak at the time she called. She requested to call me back, but I said I would like to call them back. She said she would give me a customer service number, but put me on hold. When she came back on the line, she said "Hello?", but the call then abruptly disconnected.

| Call # | Date of Call | Time of Call | Number called | Number and Name on Caller ID |
|---|---|---|---|---|
| **6.** | **Nov. 15, 2019** | **1:09 PM** | **410-692-2749** | **410-692-8898 / Jarrettsvl MD** |

**Call 6 details:** Call 6 delivered a robocall message in a male voice that said:

"**Hello. This is an apology call from your electric utility. You got overcharged by your third party supplier. You will be receiving a $100 bill adjustment, along with a 40% discount on your electric and gas bill. Please press 1 to adjust $100 in your bill. Please press 1 now**."

I pressed 1, and said "Hello?" two times. A guy with an Indian accent finally came on and said his name was "Michael" on a recorded line. I asked what it was about. He claimed to be with my electricity billing adjustment department. He gave a spiel about getting a discount on my monthly bill. I then asked if they were **Discount Power**, and he said yes. He asked for my zip code. I told him 20150. He mentioned a discount up to 30%, and asked if I get my electricity from Delmarva Power. I said no, and he then asked if I had BGE, and I said yes.

The agent "Michael" then asked me to get me electric bill. I then asked if he was with BG&E, and he said yes. He wanted me to get my bill, and I said it was lunch time, and that I could not get it right now. He wanted to call me back. I responded by asking if I could call back next week, and he said no, so I said it was better if they don't call, and told him "Don't call" a couple times, and hung up. Plaintiff alleges that Defendant's "$100 bill adjustment" claim and message were false.

| | | | | |
|---|---|---|---|---|
| **7.** | **Nov. 15, 2019** | **2:37 PM** | **410-692-2749** | **201-285-8284 / SPAM? Bayonne N** |

**Call 7 details:** Call 7 was the same woman with an accent who said her name was "*Joselyn*," who said she was calling back because we got disconnected earlier the same day. I had to ask her several times for their number. I told her I have an 877 number, but not the rest of the number on hand. She said that the 877 number is the correct number. She kept pressing to call me back, but I said no, not to call, and eventually hung up.

The appearance of SPAM? as part of the Caller ID name that was transmitted is something caused by the phone company Armstrong when its system determines that an incoming Caller ID number is likely to be a spam or telemarketing call.

**Summary of Defendant's November 2019 Calls**

| Call # | Date of Call | Time of Call | Number called | Number/Name on Caller ID |
|---|---|---|---|---|
| **1.** | **Nov. 11, 2019** | **10:50 AM** | **410-692-2749** | **201-285-8284 / Bayonne NJ** |
| **2.** | **Nov. 11, 2019** | **5:37 PM** | **410-692-2749** | **410-692-7576 / Jarrettsvl MD** |
| **3.** | **Nov. 12, 2019** | **1:49 PM** | **410-692-2749** | **201-285-8284 / Bayonne NJ** |
| **4.** | **Nov. 14, 2019** | **1:23 PM** | **410-692-2749** | **201-285-8284 / SPAM? Bayonne N** |
| **5.** | **Nov. 15, 2019** | **12:01 PM** | **410-692-2749** | **201-285-8284 / SPAM? Bayonne N** |
| **6.** | **Nov. 15, 2019** | **1:09 PM** | **410-692-2749** | **410-692-8898 / Jarrettsvl MD** |
| **7.** | **Nov. 15, 2019** | **2:37 PM** | **410-692-2749** | **201-285-8284 / SPAM? Bayonne N** |

**Possible additional calls from Defendant**

16. Plaintiff may have received additional calls on other dates from or on behalf of the Defendant by its agents or contractors as part of Defendant's telemarketing practices and conspiracy over which Defendant exercises control, using different numbers, Caller IDs and prerecorded messages, but can not be certain, because telemarketers hide their calls and avoid contact by call recipients like Plaintiff, by bypassing or delivering faked or spoofed Caller ID, giving false or no name of the individual callers in its calls, failing to identify itself generally or to provide a phone number, failing to include an address or website identifying Defendant, using different numbers to avoid detection, by failing to identify themself during transfers during live sales calls, by failing to include a street address in communications, and by not leaving a message or providing identification in any message on the recipient's voice mail.

**Additional Allegations**

17. The **877-334-0097** number Defendant's sales agent gave to Worsham in Call #4, and confirmed in Call #7, is currently a number of and answers to Discount Power, Inc.

18. The **201-285-8284** number transmitted on Caller ID for 5 of 7 calls is not Defendant's #.

19. Defendant instructs its agents, employees and/or contractors to avoid identifying Defendant, and that if asked to identify Defendant to respond that Defendant is the "state licensed supplier for BG&E" or similar term that fails to identify Defendant.

20. Defendant is fully aware of the TCPA's requirements, and intentionally uses or allows the use of robocalls and lead-generating telemarketers and associated practices to avoid people like Worsham from identifying it other persons involved until after personal information was provided or confirmed, so that Defendant controls who calls who, and to get around the TCPA's requirements, including precluding people from even making a meaningful or informed do not call request, and ignores DNC requests that are made.

21. Defendant is aware of and approves and ratifies the leads generated through the calls and the calling practices like those described herein and received by Worsham.

22. Defendant and its telemarketers continue making illegal calls to generate leads as alleged.

23. Defendant and/or its telemarketers have made many thousands of the same robocalls, and complaints about the same robocalls are made at complaint sites on the internet.

24. Plaintiff alleges Defendant or its agents use a service to spoof or fake the caller ID number transmitted during the calls so as to mask the caller's identity and/or number.

25. Defendant is aware of the fact that any persons that help with various aspects of making calls, are violating the law, and/or consciously avoids knowing when a reasonable business person would check and find out what is really going on with the marketing.

26. Defendant's calls were initiated for the purpose of delivering a solicitation.

27. Defendant is not identified during the robocall messages.

28. Defendant exercised decision-making control over its respective policies, procedures and business practices, and made the decisions causing the violations alleged.

29. Defendant intentionally: (1) conspired and aided and abetted to call Plaintiff's and many other numbers despite the numbers being on the national DNC registry, (2) used agents to violate the law, (3) did not adequately identify itself in the calls, (4) called so inaccurate, false or incomplete Caller ID is transmitted, and (5) avoid delivering identifying messages to the voice mail of call recipients like Plaintiff.

30. The purpose of Defendant's telemarketing and of the calls and messages is to encourage purchase or rental of, or investment in, property, goods, or services offered by Defendant.

31. Defendant's calls failed to transmit or include the actual name of the caller.

32. Defendant's calls failed to transmit Defendant's phone number and name to or on Caller ID.

33. The name of the telemarketer is available for Caller ID transmission by both Plaintiffs' and Defendant's carriers (including any contractors or agents or carriers used by Defendant).

34. In Oct. 2016 Worsham sent a FOIA request to the FCC, and on January 4, 2017 the FCC sent Worsham a letter stating "*The second part of your letter seeks a list of all carriers identified by the FCC who are not capable of transmitting the name of the telemarketer as part of Caller ID transmission. We conducted a search and did not locate any responsive records*."

35. Plaintiff's Caller ID equipment can and regularly does transmit the name of the caller, and both his and all of Defendant's carriers are capable of transmitting the name of the caller.

36. Defendant's calls to Plaintiff could not have been possible without Defendant's conspiracy, and without aiding and abetting, with each other and/or any persons or entities with whom Defendant called Plaintiff, including persons or entities or agents who may have provided: (1) a call center for the initial cold calls, (2) a script for the calls, (3) a list of phone numbers to be called including Plaintiff's number, (4) automated equipment to dial many numbers and reach Plaintiff and others, (5) Caller ID spoofing or masking services, (6) advice on telemarketing and creating and delivering solicitations, including avoiding legal liability, and (7) some personal information about Plaintiff.

37. Plaintiff had no business relationship of any kind with, and did not gave any prior permission or consent to be solicited by any Defendant or any affiliates, agents, contractors or partners.

38. Defendant knew that it did not have or provide to any telemarketers, lead generators, or call centers, the prior express consent to call the persons called by or on behalf of Defendant.

39. Defendant's calls and attempted calls caused a willful and malicious injury to Worsham and to his property (phone line).

40. Defendant targets residences, and homes, and knew when it called Worsham in both 2017 and 2019 that the number 410-692-2749 was a residential number.

41. Defendant's telemarketing calls are successfully misleading, and even fooled a federal Judge to believe that Worsham had "already-purchased and paid-for" DPI's electrical services.

42. Plaintiff practiced law until mid 2014, and has not identified himself as lawyer since then.

43. Plaintiff never at any time identified his law practice as "Law Office of Michael C. Worsham" or by any name starting with "Law Office of . . ." to any person or court.

44. Plaintiff did not use his residential number 410-692-2749 as his law practice number, and has not had or used the fax number 410-510-1870 for over at least 5 years.

45. Since served with this suit by Jan. 2020, Defendant has had time to identify, and now knows, which telemarketer(s) and/or agents called and/or spoke with Worsham in 2017 and 2019.

**<u>Automatic Dialing and TCPA Allegations</u>**

46. Defendant's calls were all initiated and made with an '*automatic telephone dialing system*' (ATDS) as defined by 47 U.S.C. § 227(a)(1) and 47 C.F.R. § 64.1200(f)(2).

47. Defendant's telephone calls to Plaintiff violated the federal Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b), and the FCC's regulations promulgated pursuant to the TCPA located at 47 C.F.R. § 64.1200.

48. Defendant's telephone calls to Plaintiff violated the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6601-6108, as implemented by the Federal Trade Commission (FTC) in the Telemarketing Sales Rule,16 C.F.R. Part 310.

49. Defendant made and assisted substantially to the initiation of telephone solicitations to the Plaintiff in violation of the TCPA and FCC regulations, on, but possibly not limited to, the dates listed in this Complaint.

50. Defendant intentionally, personally and substantially participated to help arrange for the solicitation calls to be initiated and ultimately delivered to Plaintiff's phone number.

51. Defendant made more than one call within a one year period to Plaintiff in violation of the TCPA and the FCC and FTC regulations.

52. FCC regulations 47 C.F.R. § 64.1200(d)(4) and 47 C.F.R. § 64.1601(e) were promulgated pursuant to U.S.C. § 227(b)(2).

53. Defendant is a *telemarketer* engaged in *telemarketing* as defined by the FCC and FTC.

**Willful and Knowing Conduct Allegations**

54. Defendant conspired and aided and abetted others to call Plaintiff and many others in Maryland knowing that their calls would be calling into Maryland.

55. Defendant through a conspiracy and aiding and abetting to call Plaintiff and others in Maryland had numerous, substantial and continuous contacts with MD through the calls.

56. Defendant willfully and knowingly ignores the national DNC list registry.

57. Defendant failed to pay itself or through others, the annual fee for access to telephone numbers within Plaintiff's area code 410 that are included on the national DNC list Registry maintained by the FTC.

58. Defendant was aware of actual or potential TCPA violations, through feedback from consumers and call recipients, separate its awareness from Plaintiff's suits.

59. Defendant is aware of, and knows and approves of the telemarketing calling patterns and practices used in any of the calling centers and/or agents or contractors it uses.

60. Defendant intentionally and misleadingly uses the initials and name of BGE, Baltimore Gas and Electric, in its voice messages, because it knows the people in Maryland that it targets recognize BGE, and are more likely to listen to the entire message instead of hanging up.

61. Defendant profited by and through the telemarketing calling patterns and practices the agents or contractors use(d), and through the conspiracy to call and as part of the calls.

62. Defendant's profits through telemarketing led it to make a conscious decision to ignore telemarketing violations, and to deal with any suits like Worsham's as a cost of business, rather than the patently illegal and annoying conduct that it is.

63. Defendant knew of and ratified the acts and conduct of the persons involved with the calls alleged, including employees, agents, contractors or others doing the calling, including any used to call Plaintiff, and profited or benefitted by these acts and their ratification.

64. Defendant willfully and knowingly failed to clearly identify itself and the individual callers during the pre-recorded messages calls, and did not provide the full name of the individual callers, or of any other persons on whose behalf the call was being made.

65. Defendant's pre-recorded voice messages do not allow a do not call request to be made by an interactive voice- and/or key press-activated opt-out mechanism or otherwise.

66. Defendant's violations were done '*willfully*' and '*knowingly*,' as the term '*willful*' is defined at 47 U.S.C. § 312(f) and 47 U.S.C. § 503(b), and as the term '*knowingly*' is defined in 47 U.S.C. § 223(b)(1), and as both of these terms are interpreted by the FCC.

67. The persons who called Worsham, and who spoke with Worsham, are agents of Defendant, and Worsham reasonably believed so because said they were Defendant.

**COUNTS 1-4 : TELEPHONE CONSUMER PROTECTION ACT VIOLATIONS**

**COUNT 1 : Failure to honor the National Do Not Call (DNC) list Registry**

68. Defendant's Calls 1-7 violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(c)(2), which prohibit telephone solicitations to numbers on the National DNC list.

**COUNT 2 : Failure to identify a telemarketer and their telephone number**

69. Defendant's Calls 1-7 violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(d)(4), which require instituting minimum standards and procedures that "*A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.*"

70. Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to a residential subscriber without instituting minimum standards and procedures for identifying the individual caller, company name, and a contact telephone number or address, as required by 47 C.F.R. § 64.1200(d)(4).

**COUNT 3 : Failure to transmit complete Caller ID information with name and number**

71. Defendant's Calls 1-7 violated the TCPA and FCC regulations at 47 C.F.R. § 64.1601(e)(1), which requires that:

"*Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(7) must transmit caller identification information . . .*[and] *must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer.*"

In January 2017 Defendant transmitted "Power Center" as Caller ID name, and thus had the ability to control and transmit its name as required.

**COUNT 4 : Initiating a call using a prerecorded voice without prior express consent**

72. Defendant's Calls 1-6 violated the TCPA at 47 U.S.C. § 227(b)(1)(B), and a similar FCC regulation at 47 C.F.R. § 64.1200(a)(3), which provides that:

"§ 227(b)(1)(B) - *Prohibitions: It shall be unlawful for any person . . .(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission."*

73. Defendant's Calls 1-6 violated the TCPA at 47 U.S.C. § 227(b)(1)(B) because they were all telemarketing calls which lacked Worsham's prior express consent, and were all *initiated*

(including Call 1 even though it was not answered) to deliver a prerecorded voice message, for the commercial purpose to induce Worsham to switch his electric service provider from being BG&E and induce him to purchase DPI's electric service, and the purpose was not as the prerecorded messages falsely and misleadingly state to provide a discount or adjustment to a bill, which could not even be done or given since Worsham did not have (and has never had) electric service with DPI, and were certainly not made to "apologize" (Calls 2 and 6).

**MARYLAND TELEPHONE CONSUMER PROTECTION ACT (MD-TCPA)**

Plaintiff incorporates the above allegations, and further alleges the following violations of the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-14-3202, which prohibits a person from violating the federal TCPA, FTC Telemarketing Sales Rule, and/or the FCC and/or FTC telemarketing regulations, and which makes each prohibited telephone solicitation and each prohibited practice during a telephone solicitation a separate violation, as described below.

The private right of action in the MD-TCPA is separate and independent of any private right of action or lack thereof under the federal TCPA for a specific violation of FCC or FTC rules, and the MD-TCPA unambiguously creates a private right of action for violations that does or may not exist otherwise, including an attorneys' fee provision that does not exist in the TCPA or FTC rules.

**COUNTS #5-11: TCPA and FCC violations which also violate the Maryland TCPA**

74. **Count 5**: Defendant's violations in Count 1 above also violate the MD-TCPA, Maryland Annotated Code, Commercial Law Art. (CL) §§ 14-3201-3202.

75. **Count 6**: Defendant's violations in Count 2 above also violate the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

76. **Count 7**: Defendant's violations in Count 3 above do not violate the MD-TCPA, and Worsham does not seek any damages for Count 7.

77. **Count 8:** Defendant's violations in Count 4 above also violates the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

**Count 9: Failing to provide an automated interactive voice or key activated opt out mechanism**

The MD-TCPA creates a private right of action for violations of the FCC's regulations at 47 C.F.R. Part 64, Subpart L, which are codified at 47 C.F.R. § 64.1200, and therefore include the FCC regulations at 47 C.F.R. § 64.1200(b)(1)-(3), regardless of whether any federal private right exists.

78. **Count 9:** Defendant's Calls 2-6 violated 47 C.F.R. § 64.1200(b)(3), which requires that:

> "(b) *All artificial or prerecorded voice telephone messages shall: . . .(3) In every case where the artificial or prerecorded voice telephone message includes or introduces an advertisement or constitutes telemarketing and is delivered to a residential telephone line or [wireless numbers] . . . provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, within two (2) seconds of providing the identification information required in paragraph (b)(1) of this section."*

and violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

**COUNT 10: Failing to state clearly the identity of the business, individual or entity responsible**

79. **Count 10:** Defendant's Calls 2-6 violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(b)(1), which require that:

> "*All artificial or prerecorded voice telephone messages shall: . . .(1) At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated".*

and violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

**COUNT 11 : Failing to state clearly the telephone number of the business or individual**

80. **Count 11:** Defendant's Calls 2-6 violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(b)(2), which requires that:

> "*All artificial or prerecorded voice telephone messages shall: . . .(2) During or after the message, state clearly the telephone number (other than the that of the autodialer or prerecorded message player that placed the call) of such business, other entity, or individual. . . . For telemarketing messages to residential telephone subscribers, such telephone number must permit any individual to make a do-not-call request during regular business hours for the duration of the telemarketing campaign."*

and violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

**COUNTS 12-17**

**FTC Telemarketing Sales Rule (TSR) violations which also violate the Maryland TCPA**

Defendant is a '*seller*' and '*telemarketer*' who was engaged in "*telemarketing*" through its calls to Worsham in both Jan. 2017 and November 2019, because it arranged to provide offers and services in exchange for consideration, by initiating interstate phone calls as part of a plan or campaign to induce purchases of its electric power service, under the misleading pretense that it is the local electric service provide (BG&E) offer a discount or adjustment.

81. **Count 12: Failure to transmit complete Caller ID information with name and number**

Defendant's Calls #1-7 violate 16 C.F.R. § 310.4(a)(8), the FTC regulation which prohibits "(8) *Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call.",* and this violation also violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

82. **Count 13: Failure to honor the National Do Not Call (DNC) list Registry**

Defendant's Calls #1-7 violate 16 C.F.R. § 310.4(b)(1)(iii)(B), the FTC regulation which prohibits initiation of "*any outbound telephone call to a person when . . . (B) That person's telephone number is on the "do-not-call" registry*," and this also violates the Maryland TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

83. **Count 14: Failure to disclose promptly and clearly the seller's identity and purpose**

Defendant's Calls #1-7 violate 16 C.F.R. § 310.4(d)(1), the FTC regulation requiring telemarketers to "*disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call . . .(1) The identity of the seller; (2) That the purpose of the call is to sell goods or services; (3) The nature of the goods or services."* and violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

84. **Count 15: Initiating a call that delivers a prerecorded message**

Defendant's Calls 2-6 violate 16 C.F.R. § 310.4(b)(1)(v), the FTC regulation which defines as an abusive act or practice and prohibits "*(v) Initiating any outbound telephone call that delivers a prerecorded message,*" and this violation also violates the Maryland TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

85. **Count 16: Failure to pay the annual fee for the do not call list for Plaintiff's area code**

Defendant's Calls #1-7 violate 16 C.F.R. § 310.8(a), the FTC regulation which makes it a violation of the FTC's TSR for:

"*any seller to initiate, or cause any telemarketer to initiate, an outbound telephone call to any person whose telephone number is within a given area code unless such seller, either directly, or through another person, first has paid the annual fee, required by § 310.8(a), for access to telephone numbers within that area code that are included in the National Do Not Call Registry maintained by the Commission,"*

and this violates the MD-TCPA, MD Ann. Code, Commercial Law Art. §§ 14-3201-3202.

86. **Count 17: Making false or misleading statements to induce a sale of goods or services**

Defendant's Calls 2-6 violate 16 C.F.R. § 310.3(a)(4), the FTC regulation which makes it a deceptive act or practice and prohibits any seller or telemarketer from (4) "*Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution*," and this violation also violates the Maryland TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

87. Calls 2-6 mislead the recipients, *inter alia*, that the caller was the real BG&E, and/or was apologizing for an overcharge that in fact never occurred.

## REQUESTED RELIEF

88. Each violation on a separate occasion by a Defendant or any conspiring or aiding partners, employees, agents and/or contractors to comply with the TCPA or FCC or FTC regulations constitutes a separate violation of the federal TCPA, Maryland TCPA, and FTC regulations.

### Federal TCPA Damages

89. The TCPA, 47 U.S.C. §§ 227(b)(3) and (c)(5) provides an explicit private right of action for $500 in statutory damages for each violation of the TCPA or an FCC regulation issued under the TCPA pursuant to 47 U.S.C. § 227(b).

90. The TCPA, 47 U.S.C. §§ 227(b)(3) and(c)(5) explicitly provide for up to triple damages if a Defendant willfully or knowingly violates the TCPA or the FCC regulations.

91. **Counts 1 to 4**: Plaintiff demands $1,500 for each separate violation of the TCPA and/or the FCC's regulations, which includes treble damages for each willful or knowing violation of the TCPA or FCC regulations, as follows:

| | | |
|---|---|---|
| **Count 1**: | 7 calls x 1 federal TCPA violation x $1,500/violation = | **$ 10,500** |
| **Count 2**: | 7 calls x 1 federal TCPA violation x $1,500/violation = | **$ 10,500** |
| **Count 3**: | 7 calls x 1 federal TCPA violation x $1,500/violation = | **$ 10,500** |
| **Count 4**: | 6 calls x 1 federal TCPA violation x $1,500/violation = | **$ 9,000** |
| **Total federal TCPA statutory damages (7+7+7+6 = 27 violations) =** | | **$ 40,500** |

92. The TCPA, 47 U.S.C. § 227(b)(3)(A) and § 227(c)(5(A) provide for injunctive relief to enjoin violations of the FCC's regulations prescribed under the TCPA.

93. Plaintiff requests injunctive relief prohibiting the Defendant and all persons under its control from calling Plaintiff and other persons anywhere in violation of the TCPA.

## Maryland TCPA Damages

94. **Counts 5 to 17**: For the 7 calls identified so far, Plaintiff demands $500 for each of the separate violations of the Maryland TCPA in Counts 5, 6, 8-17, pursuant to MD Commercial Law Art. § 14-3202(b)(2), and reasonable attorneys fees as may apply under CL § 14-3202(b)(1).

95. Plaintiff seeks the following Maryland TCPA statutory damages for Counts 5-17:

| | | |
|---|---|---|
| **Counts 5**: | 7 calls = 7 Maryland TCPA violations x $500/violation = | **$ 3,500** |
| **Counts 6**: | 7 calls = 7 Maryland TCPA violations x $500/violation = | **$ 3,500** |
| **Counts 7**: | 0 damages sought. | |
| **Counts 8**: | 6 calls = 6 Maryland TCPA violations x $500/violation = | **$ 3,000** |
| **Counts 9**: | 5 calls = 5 Maryland TCPA violations x $500/violation = | **$ 2,500** |
| **Counts 10**: | 5 calls = 5 Maryland TCPA violations x $500/violation = | **$ 2,500** |
| **Counts 11**: | 5 calls = 5 Maryland TCPA violations x $500/violation = | **$ 2,500** |
| **Counts 12**: | 7 calls = 7 Maryland TCPA violations x $500/violation = | **$ 3,500** |
| **Counts 13**: | 7 calls = 7 Maryland TCPA violations x $500/violation = | **$ 3,500** |
| **Counts 14**: | 7 calls = 7 Maryland TCPA violations x $500/violation = | **$ 3,500** |
| **Counts 15**: | 5 calls = 5 Maryland TCPA violations x $500/violation = | **$ 2,500** |
| **Counts 16**: | 7 calls = 7 Maryland TCPA violations x $500/violation = | **$ 3,500** |
| **Counts 17**: | 5 calls = 5 Maryland TCPA violations x $500/violation = | **$ 2,500** |
| **Total Maryland TCPA statutory damages** | | **= $ 36,500** |

(7 + 7 + 0 + 6 + 5 +5 + 5 + 7 + 7 + 7 + 5 + 7 + 5 = 73 Maryland TCPA violations)

WHEREFORE the Plaintiff seeks from the Defendant **$40,500** in federal statutory damages,

and **$36,500** in Maryland statutory damages, for a **Grand Total of $77,000** damages sought for the telemarketing solicitation violations identified thus far, an injunction prohibiting the Defendant or any persons under its control from calling or assisting with calling any persons in violation of the TCPA or FCC regulations, reasonable attorneys fees as may apply pursuant to CL § 14-3202(b)(1), costs, and other such relief as is just and necessary.

## JURY TRIAL DEMAND

The Plaintiff requests a trial by jury for all matters triable by a jury.

Respectfully submitted,

/s/ Michael C. Worsham

Michael C. Worsham, Plaintiff
1916 Cosner Road
Forest Hill, Maryland 21050
410-557-6192
michael @ magicmichael.net

## CERTIFICATE OF SERVICE

On May 13, 2021 this document was filed for service through the Court's ECF system.

/s/ Michael C. Worsham

Michael C. Worsham