**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

**MICHAEL C. WORSHAM** *

*Plaintiff* *

vs. *

Case 1:20-cv-00008-RDB

**DISCOUNT POWER, INC.** *

*Defendant* *

* * * * * * * * * * * * *

**PLAINTIFF'S MOTION TO RECONSIDER THE MEMORANDUM ORDER DISMISSING WILLFUL OR KNOWING CLAIMS WITH PREJUDICE**

Plaintiff Michael C. Worsham moves under Local Rule 105.10 for this Court to reconsider, under Fed. R. Civ. Proc. (FRCP) 59(e) to alter or amend judgment, and under FRCP 60(b) to grant relief from a judgment, for its December 1, 2021 Memorandum Order (ECF 137) and accompanying Order (ECF 138) dismissing with prejudice Worsham's claims for treble damages for violations done willfully or knowingly in Counts 1 and 2 of the May 13, 2021 Amended Complaint (ECF 54).

The Court's Order did not address the "willful" component of the TCPA's provision at 47 U.S.C. 227(c)(5) for up to treble damages for a federal TCPA violation, and relied on a case which cited through erroneously to an FCC decision. The Court's analysis of the "knowingly" component of the same TCPA provision applied an inapplicable "actual knowledge" or "previous liability" standard for a violation done knowingly under the TCPA.

The Amended Complaint easily met the pleading standard that Defendant's violations were done willfully or knowingly. The Court should reconsider that portion of the Court's Order for the reasons herein[1], and reinstate and allow discovery for Worsham's claims for violations done willfully or knowingly in Counts 1 and 2.

---

[1] Worsham disagrees with other parts of the Memorandum Order dismissing his claims with prejudice, but is only moving to reconsider the willful and knowing aspect of the Order.

**Legal Standard**

Local Rule 105.10 provides that motions to reconsider may be filed no later than fourteen days after entry of an order.

FRCP 59(e) provides for a motion to alter or amend a judgment filed within 28 days of the entry of judgment, on three grounds, including: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230 (4th Cir. 2008), citing *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).

FRCP 60(b)(1) provides for relief from a judgment for mistake, inadvertence, surprise, or excusable neglect by any person, which can include legal errors by the court, *Pearson v. Target Corp.*, 893 F.3d 980, 94 (7th Cir. 2018), *Manning v. Astrue*, 510 F.3d 1246, 1249 (10th Cir. 2007). FRCP(b)(3) provides for relief from a judgment for fraud, misrepresentation, or misconduct by an opposing party, *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 818 F.3d 1320, 1328 (Fed. Cir. 2016) (misconduct does not require nefarious intent or purpose), and this portion of Rule 60 is remedial and liberally construed, *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005). FRCP 60(b)(6) provides for relief from a judgment for any other reason that justifies relief. *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 299 (4th Cir. 2017).

The Court's December 1, 2021 Order at p. 4 stated that if a Motion for Reconsideration is filed within 14 days of a decision, then "Rule 59(e) governs this Court's analysis." However, the Order did not explicitly state or explain why a motion can not also be governed by Rule 60, in particular the "catchall" section recognized by the Fourth Circuit in *Wells Fargo Bank, N.A.* It would not make sense that a Motion, like the instant Motion, which is filed

within 14 days of the decision it seeks to change, would have fewer applicable provisions upon which to base a change than a motion filed over 28 days has under FRCP 60.

**TCPA provision for treble damages for willful or knowing violations**

The Court's Memorandum Order addressed the treble damages claims on pages 13-14. It stated the relevant TCPA provision, which provides that:

(c) Protection of subscriber privacy rights

(5) Private right of action

> If the Court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(c)(5). Subparagraph B provides for actual damages, or statutory damages up to $500, for each violation.

The relevant TCPA language above uses the disjunctive "or" in establishing what conduct gives rise to treble damages: violations done willfully **or** knowingly. A defendant's violations need only be done willfully, or, knowingly, not both, for treble damages. However, the Court's Memorandum Order did not address violations done willfully, for which the required pleading level is not high.

***Willful* conduct under the TCPA**

Federal communications law defines "*willful*," which the Am. Complaint cited at ¶ 66:

> (1) The term "*willful*", when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation of the Commission authorized by this chapter or by a treaty ratified by the United States.

47 U.S.C. § 312(f). A *willful* act is simply an intentional or deliberate act, regardless of any intent to violate the law. *Baltimore–Washington Tel. Co. v. Hot Leads Co.*, 584 F. Supp. 2d

736, 745 (D. Md. 2008) (quoting 47 U.S.C. § 312(f)(1)). An inadvertent or accidental act would not be *willful* conduct.

The Amended Complaint very easily met the federal pleading standard to allege that Discount Power, Inc.'s (DPI) violations were willful, or done willfully. The acts of DPI were well plead to be intentional, and not inadvertent, including because multiple violations are alleged, which can not be explained away as inadvertence or accidental. The violations alleged were multiple in two separate ways. First, in the number of violations within a single call, two of which the Court has now recognized in Counts 1 and 2. Second, in the number of calls that violated the TCPA (seven calls total). The well plead allegations of multiple violations in each of the multiple calls is a factual basis upon which to allege that the violations were done willfully.

Relevant allegations specific to DPI's *willful* conduct include the detailed allegations in ¶ 15 about the 7 calls and Worsham's do not call requests, and the following allegations:

19. Defendant instructs its agents, employees and/or contractors to avoid identifying Defendant, and that if asked to identify Defendant to respond that Defendant is the "state licensed supplier for BG&E" or similar term that fails to identify Defendant.

20. Defendant is fully aware of the TCPA's requirements, and intentionally uses or allows the use of robocalls and lead-generating telemarketers and associated practices to avoid people like Worsham from identifying it other persons involved until after personal information was provided or confirmed, so that Defendant controls who calls who, and to get around the TCPA's requirements, including precluding people from even making a meaningful or informed do not call request, and ignores DNC requests that are made.

28. Defendant exercised decision-making control over its respective policies, procedures and business practices, and made the decisions causing the violations alleged.

29. Defendant intentionally: (1) conspired and aided and abetted to call Plaintiff's and many other numbers despite the numbers being on the national DNC registry, (2) used agents to violate the law, (3) did not adequately identify itself in the calls, (4) called so inaccurate, false or incomplete Caller ID is transmitted, and (5) avoid delivering identifying messages to the voice mail of call recipients like Plaintiff.

> 50. Defendant intentionally, personally and substantially participated to help arrange for the solicitation calls to be initiated and ultimately delivered to Plaintiff's phone number.
>
> 56. Defendant willfully and knowingly ignores the national DNC list registry.
>
> 60. Defendant intentionally and misleadingly uses the initials and name of BGE, Baltimore Gas and Electric, in its voice messages, because it knows the people in Maryland that it targets recognize BGE, and are more likely to listen to the entire message instead of hanging up.
>
> 64. Defendant willfully and knowingly failed to clearly identify itself and the individual callers during the pre-recorded messages calls, and did not provide the full name of the individual callers, or of any other persons on whose behalf the call was being made.

Amended Compliant at ¶¶ 19, 20, 28, 29, 50, 56, 60 and 64. Allegations in ¶¶ 19, 56, 60 and 64 in particular support Counts 1 and 2 which the Court has allowed to proceed.

As one example demonstrates, ¶ 15 alleges that during Call 3 on November 19, 2019 that:

> "[Joselyn] avoided identifying the company, and I had to ask her several times to get her to finally tell me the company were **Discount Power**. I told her not to call a few times, and hung up."

(bolding in original Amended Complaint). The Court now has a compact disk with the audio recording of Call 3, and can hear exactly what occurred during Call 3. These allegations for Call 3 provide the direct factual support for the *willful* conduct related allegations in: (I) ¶ 19 that "Defendant instructs its agents, employees and/or contractors to avoid identifying Defendant," (II) in ¶ 20 that DPI "ignores DNC requests that are made," (III) in ¶ 29 that "Defendant intentionally: (1) conspired and aided and abetted to call Plaintiff's and many other numbers despite the numbers being on the national DNC registry, . . . (3) did not adequately identify itself in the calls," (IV) in ¶ 56 that "Defendant willfully and knowingly ignores the national DNC list registry," and (V) in ¶ 64 that "Defendant willfully and knowingly failed to clearly identify itself and the individual callers during the pre-recorded messages calls, and did

not provide the full name of the individual callers, or of any other persons on whose behalf the call was being made." These paragraphs 19, 20, 29, 56 and 64 plead the *willful* conduct directly related to the elements of Count 1 for alleged do-not-call list violations, and for Count 2 for alleged caller identification violations. The pleading standard for *willful* violations (violations done willfully) under the TCPA is not a high standard, and the Amended Complaint easily met this standard. *Charvat v. Ryan*, 879 N.E.2d 765, 771 (Ohio 2007) ("Congress chose to employ a low threshold to assess treble damages").

The FCC has held that a willful violation of the TCPA is one where the "violator knew that he was doing the act in question ... [and that the] violator need not know that his action of inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mort., LLC*, 22 FCC Rcd 9453, 9470 n.86 (2007). The FCC has used bumping a switch as an example of an act that could give rise to a violation that would not be construed as *willful. Id*. Under the TCPA, *willful* means that the act out of which a violation arises was not an accident or mistake, even if the resulting violation of the TCPA was unintended. *Charvat*, 879 N.E.2d at 771 ("We hold that to establish a willful violation of the TCPA for an award of treble damages, a plaintiff must prove that the defendant consciously and deliberately committed or omitted an act that violated the statute, irrespective of any intent to violate the law.").

The Court's decision including through silence regarding *willful* violations is not consistent with *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). Ashcroft only requires that to survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." The Order's decision is also not consistent with *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Twombly* does not require detailed factual allegations, and recognizes that a cause of action is cognizable "even if . . .

[the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id*. at 555, 556. It is no stretch whatsoever to recognize that this suit could prove that DPI's calls were done intentionally, and not accidentally, which would be *willful* conduct.

**<u>The *American Blastfax* quote citing the FCC which the Court relied on is erroneous</u>**

The quote that the Court (at p. 13, bottom), *Universal Elections,* and *American Blastfax* all relied on erroneously blurred the distinction between *willful* and *knowing* conduct and violations. It is also an objectively erroneous quote when traced back to the actual FCC source. The Court's Order cited *Universal Elections*, which in turn was quoting *American Blastfax*:

> The Federal Communications Commission has interpreted "willful or knowing" under the Telecommunications Act (of which the TCPA is a part), as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute.

December 1, 2021 Order at p. 13, citing *Universal Elections*, 862 F. Supp. 2d at 463 (quoting *American Blastfax*, 164 F. Supp. 2d at 899). *Universal Elections* cited the original FCC decision, *In re Intercambio, Inc*., 3 F.C.C.R. 7247, 1988 WL 486783 (F.C.C.1988), but this Court's Order did not. However, and importantly, the FCC's *Intercambio* decision never even mentions the words *willful* or willfully. The *American Blastfax* decision grouped *"willful or knowing*" together in quotes and attributed these terms to the FCC, which is clearly erroneous by including the term *willful* and giving it the same meaning as *knowing*. The *Intercambio* decision is cited correctly for the FCC's interpretation of *knowingly* under 47 U.S.C. § 223(b)(1), the statute governing obscene or harassing telephone calls[2]. *Universal Elections*,

---

[2] The relevant paragraph 29 from *Intercambio* stated (bolding emphasis added):

29. We interpret the term "***knowingly***" as used in Section 223(b)(1) consistent with this view of the statutory scheme. In order to establish the level of scienter necessary to satisfy this element of the offense, we need not establish that a message provider specifically intended to use telephone facilities to make an obscene communication to a particular minor, or to minors in general, for commercial purposes on an interstate basis. Rather, **we need only establish that the message provider knew or should have known that it**

and this Court's Order, are incorrect to the extent they relied on the erroneous *American Blastfax* decision on this point.

*Willful* and *knowing* (willfully and knowingly are the actual terms in the TCPA statute) are separate and distinct terms. They should not be blended together or blurred during legal analysis. *Willful* has the explicit statutory definition at 47 U.S.C. § 312(f)(1) discussed *supra,* which accordingly makes it the more reliable term to consider. Since the disjunctive 'or' separates willfully and knowingly in the TCPA statute, and only one of these types of conduct is required to be plead (or proven) for treble damages, the Court may choose for ease of analysis to limit its decision for the instant Motion to interpreting willful/willfully.

The Order's ultimate decision that there is no set of facts upon which Worsham's claims for *willful* violations will be successful, and that the Amended Complaint failed to

---

> **was engaging in activities that could constitute a violation of the statute**.[Footnote 29] In this regard, we expect message providers to be aware of the manner and circumstances under which their telephone messages may be accessed. We also find that a message provider can reasonably be expected to be aware of the fact that children can and will access dial-it messages where there are no effective barriers to their doing so and that it should be held accountable for its failure to prevent such access. Furthermore, message providers in the business of transmitting sexually explicit telephone messages to callers for a fee can be expected to be aware of the content of the messages they are offering.
>
> Footnote 29, within paragraph 29 of *Intercambio*, stated (bolding emphasis added):
>
> 29. Were we to interpret the term "**knowingly**" otherwise and allow a message provider's assertion that he never specifically intended to transmit his messages to a minor or minors to serve as a defense to prosecution under the statute in cases where those messages were in fact readily accessible to minors, the entire statutory purpose would be defeated. Message providers could readily avoid enforcement of the statute against them, and they would have no incentive to comply with the Commission's dial-a-porn regulation or take any other steps to restrict access to minors as Congress intended. A message provider offering a tape recording to all callers indiscriminately will never know whether an individual caller is a minor or adult. Accordingly, we reject an interpretation of "**knowingly**" that requires the message provider to intend that its messages be transmitted to minors as unreasonable under the statutory scheme, because it would allow noncompliance without risk of prosecution by all dial-a-porn providers, in direct contravention of Congressional intent

state a claim for *willful* violations, is a clear error of law, and must be reconsidered.

***Knowing* conduct and violations under the TCPA**

Worsham need not plead (or prove at trial) that DPI's violations were both *willful* and *knowing*, just one **or** the other. 47 U.S.C. § 312(f)(1). The argument *supra* establishes that the Amended Complaint adequately plead that DPI's violations were done willfully. This section will still address that DPI's violations were done willfully, because the Court's Order set a too high standard for pleading knowing violations which should be corrected.

In the Order on p. 14 in footnote 8, the Court effectively set and applied a standard for violations done knowingly (*knowing* conduct) under the TCPA that a defendant can only *know* its conduct is prohibited if the defendant has already been sued and found liable for violating the TCPA. The Court acknowledged in footnote 8 that DPI had been sued by both Worsham, and in a separate class action, both prior to all 7 calls at issue in this suit received in November 2019. It then found these suits of no moment, and not facts supportive of pleading a knowing violation, because Worsham's suit settled[3], and because the class action was dismissed.

Defendants always deny having violated any law or regulation, even after a court or jury rules against them, and even after an appeal court upholds the lower court. The Court's footnote ignores the reality of what settlement really means for a defendant: we have some liability exposure, so let's settle, before our conduct becomes even more public and as a judgment. A settlement means at a minimum that a defendant is on notice about whatever they were sued about, and if they violate the same law after that, the previous suit is a factual basis upon which to allege that the same defendant's post-lawsuit conduct and any alleged violation is a knowing violation. The Court's Order treated the Amended Complaint as if it was a

[3] Worsham's 2017 suit against DPI was in the District Court for Harford County, Maryland, not the Circuit Court for Howard County, as the Court's footnote 8 incorrectly stated.

summary judgment motion, and as if Worsham was required to prove knowing violations, rather than simply being required to allege them. Doing so was a clear error of law.

***Universal Elections, Inc.* supports a lower pleading threshold for knowing violations**

A decision by another Judge of this Court cited in the Order supports the more correct and lower standard for what constitutes an adequate pleading of *knowing* conduct and violations under the TCPA:

> there is no question that both Russell and Henson knowingly violated the TCPA disclosure requirements. Russell admits that she was aware of the relevant TCPA requirement months, if not years, before the relevant decisions in this case.

*Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 463 (D. Md. 2012). Worsham made the same allegations that DPI was aware of the TCPA through the previous lawsuits including his own against DPI, but which the Order dismissed as inconsequential or inadequate with respect to pleading knowing violations. The very next sentence in *Universal Elections*, stated "And she acknowledges that she and Henson actively decided not to include the required identifying information in the message." Worsham made the same allegations about DPI not including the required identifying information in its calls in ¶¶ 19 and 64 cited *supra.* Two sentences later *Universal Elections*, stated:

> Nonetheless, the court may infer from his actions that he acted knowingly. To begin with, in Henson's role as owner and officer of Universal Elections, he **undeniably had reason to know of and should have known about the TCPA disclosure requirements**.

*Id*. at 463-4 (emphasis added). Here the corporation's knowledge is being imputed to the individual defendant owner and officer, something Worsham need not do since DPI is a corporation, and is liable for the acts of itself and its officers, but importantly *Universal Elections* found the actor "undeniably had reason to know of" the TCPA. Again, Worsham plead the same facts as those which *Universal Elections* cited here as supporting a finding that

the defendant acted knowingly, through the previously discussed allegations that DPI had already been sued several times about the TCPA, and in ¶ 20 which explicitly alleged "Defendant is fully aware of the TCPA's requirements." The Court's not recognizing in footnote 8 that Worsham's pleading DPI's knowledge of the TCPA from previous suits is not in accord with *Universal Elections*, and an error of law.

A Texas case cited by both *Universal Elections* and this Court's Order also supports the correct and lower standard for pleading *knowing* violations. *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Texas 2001) stated that "Here, the defendants were well-aware of the TCPA when they began sending unsolicited intrastate fax advertisements in Texas in 1997" as part of its support for finding the American Blastfax defendants knowingly violated the TCPA. *American Blastfax* did not impose the higher factual pleading requirement that this Court did in footnote 8, ruling that defendants's violations were knowing because they were well aware of the TCPA **when they began** sending unsolicited fax ads. The fact that the defendants in *Universal Elections* and *American Blastfax* were among the most egregious TCPA violators whose conduct was very easily and readily found to be both willful and knowing violations, does not mean that conduct with a lesser degree of knowledge on the violator's part can not also meet the *knowing* standard.

The Court's Order regarding knowing violations is inconsistent with the *Universal Elections* and *American Blastfax* decisions, and a clear error of law, and should be reconsidered. The Amended Complaint adequately plead claims for violations done knowingly under the FCC standard of the company "knew or should have known that it was engaging in activities that could constitute a violation of the statute." *Intercambio* at ¶ 29.

WHEREFORE the Court should grant this Motion to Reconsider, and reinstate Worsham's claims in Counts 1 and 2 for violations that were done willfully or knowingly, and allow discovery on these claims, including a reasonable extension of discovery as may be necessary.

Respectfully submitted,

/s/ Michael C. Worsham

Michael C. Worsham, Plaintiff, *Pro Se*
1916 Cosner Road
Forest Hill, Maryland 21050
410-557-6192
michael @ magicmichael.net

**CERTIFICATE OF SERVICE**

On December 15, 2021 this document was filed through the Court's ECF system for service on all parties and counsel of record.

/s/ Michael C. Worsham

Michael C. Worsham