**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **MICHAEL C. WORSHAM** | * | |
| *Plaintiff* | * | |
| vs. | * | Case 1:20-cv-00008-RDB |
| **DISCOUNT POWER, INC.** | * | |
| *Defendant* | * | |

* * * * * * * * * * * * *

**PLAINTIFF'S OPPOSITION TO DEFENDANT DISCOUNT POWER, INC.'S (DPI) MOTION FOR SUMMARY JUDGMENT**

Plaintiff Michael C. Worsham responds in opposition to Defendant DPI's Motion for summary judgment (ECF 277). Worsham's own Motion for Summary Judgment (ECF 276) and other filings have addressed many or most of the arguments in DPI's Motion, including through Worsham's most recent Motion to Strike (ECF 284) DPI's new arguments in DPI's Motion based on DPI's improper last minute surprise inclusion of an Affidavit of Craig Johnson as Exhibit E (ECF 277-6). For the additional reasons discussed herein, DPI's Motion should be denied with prejudice.

## OPPOSITION ARGUMENT

Much of DPI's unduly repetitive Motion for Summary Judgment argues that DPI did not make - meaning physically dial - the 7 calls at issue in this suit. That is not asserted at this point, but does not preclude liability against DPI for calls made by or on DPI's behalf under 47 U.S.C. § 227(c)(5).

### DPI Can Not Rely on its Improperly Submitted Affidavit of Hound Energy, LLC

For the reasons stated in Worsham's pending Motion to Strike (ECF 284), DPI can not rely on its last minute post-discovery surprise Affidavit from Craig Johnson of Hound Energy which DPI included as Exhibit E to its summary judgment motion.

DPI failed to disclose in discovery the Craig Johnson/Hound Energy information in this

Affidavit, and Hound Energy is currently in a state of contempt for failing to appear for its deposition. Rule 56(c)(4) requires that for an affidavit or declaration to be acceptable at the summary judgment stage, it must be admissible in evidence at trial. The Craig Johnson/Hound Energy is not admissible, because Johnson and Hound Energy would not be permitted to testify at trial after having failed to appear for their deposition and being in contempt, and after having denies Worsham the opportunity to depose them.

Accordingly the Court must ignore and strike any part of DPI's motion based on the improper Affidavit of Johnson and Hound Energy. *See e.g.* DPI Memorandum (ECF 277-1) at pages 5, 10, 14 and 15.

**DPI's Continuing Bad Faith Argument About an Erroneous Florida Docket Entry**

Worsham's Motions for Sanctions and other filings have addressed DPI's patently frivolous and bad faith argument that Worsham's land line number 410-692-2749 was a business number because DPI's counsel searched a Florida docket entry and found a since-corrected error by the Florida clerk.

Worsham was not licensed to practice law after 2014. Any document or material that purports to associate Worsham or his phone number with the practice of law after 2014 is objectively and incontrovertibly erroneous. The since-corrected Florida docket entries from several years ago are such materials. Worsham does not create or control the docket entries of any court where he has had cases pending, and did not create the erroneous Florida docket. Also, although federal docket's are available to the public, they are not published to the world, as DPI repeatedly and falsely argues in bad faith. One must have a PACER account, log in, search for and find information, and pay a per page fee, to access docket information.

Even if Worsham had affirmatively instructed the Florida court to put "Law Office of Michael C. Worsham" on its docket, that still would be irrelevant. Worsham was not licensed

to practice law after 2014, and could not have used any phone number for any law office business purposes when DPI called in November 2019.

DPI's continuing Florida docket argument is patently frivolous. It demonstrates that when sanctionable behavior is not sanctioned, it will continue. DPI should be sanctioned now just as it should have been over a year ago for this bad faith and frivolous argument.

If for some reason the Court has any problem recognizing this, simply insert "Worsham rode with Jeff Bezos and William Shatner in the Blue Origin spaceship," in place of "Law Office of Michael C. Worsham" on the Florida docket sheet. A clerk in Florida inserting either of these equally objectively false and incorrect assertions has no merit whatsoever or relevance to this case.[1]

DPI's citations in its Memo. at p. 17 to *Worsham v. Accts. Receivable Mgt., Inc*., 497 F. App'x 274, 278 (4th. Cir. 2012) (*per curiam*) (agreeing with holding in *Worsham v. Ehrlich*) is completely inapplicable to this case. *Accts. Receivable Mgt., Inc*. was a case involving debt collection calls, and *Ehrlich* involved political calls. Neither of those cases involved telemarketing calls, which are regulated quite differently under the TCPA.

**<u>The Non-Delegation Doctrine Applies to the TCPA and All Federal Statutes</u>**

The Non-Delegation doctrine places liability on principals for the acts of their contractors, regardless of whether the contractor is a formal agent, and applies to all federal laws, including the TCPA. There is no exception for the TCPA, as DPI appears to argue at page 11 of its Memo. (ECF 277-1).

DPI is a seller and liable regardless of whether its telemarketers are agents or independent contractors. DPI is liable for the conduct of its contractors in complying with

[1] DPI's argument at p. 17 that the Florida docket somehow constitutes or created express written consent for DPI to call Worsham is probably DPI's most patently absurd, frivolous, and bad faith argument.

federal law like the TCPA under the Supreme Court's non-delegation doctrine, and for its agents under common law agency, as well as under 47 U.S.C. 227(c)(5) for "on behalf of" statutory liability.

Fifty years ago the Fourth Circuit applied a nondelegable duty to comply with Title VII of the Civil Rights Act in *Robinson v. Lorillard Corporation*, 444 F.2d 791 (4th Cir. 1971), holding Lorillard liable for discriminatory hiring:

> The rights assured by Title VII are not **rights which can be bargained away - either by a union, by an employer, or by both acting in concert**. Title VII requires that both union and employer represent and protect the best interests of minority employees. Despite the fact that a strike over a contract provision may impose economic costs, if a discriminatory contract provision is acceded to **the bargainee as well as the bargainor will be held liable**.

*Id.* at 799 (emphasis added).

Applied and analogized to a TCPA context, DPI is the employer, its telemarketing vendors is the union, consumers are the minority employees, telemarketing violations are the discriminatory contract provisions, and the TCPA is the nondelegable federal law. DPI and its vendors (telemarketers) can not separately or in concert violate (or bargain away) the privacy and consumer protection rights in the TCPA. They are both required to protect the interests of consumers like Worsham. They (bargainee and bargainor) will both be held liable for violations.

*Lorillard* is the nondelegation doctrine applied to compliance with a federal statute. *C.f. Morrison-Knudsen Co. v. NLRB*, 275 F.2d 914, 917 (2nd Cir.1960), *cert. denied*, 366 U.S. 909 (1961) ("But regardless of the extent of their knowledge we agree with the Board that an employer may not avoid liability for violations of the Act by the hiring hall when he has turned over to it the task of supplying the men to be employed.").

The Supreme Court recognized the nondelegation doctrine in *General Bldg.*

*Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 395-96 (1982):

> The concept of a nondelegable duty imposes upon the principal not merely an obligation to exercise care in his own activities, but to answer for the well-being of those persons to whom the duty runs. **The duty is not discharged by using care in delegating it to an independent contractor. Consequently, the doctrine creates an exception to the common-law rule that a principal normally will not be held liable for the tortious conduct of an independent contractor**. So understood, a nondelegable duty is an affirmative obligation to ensure the protection of the person to whom the duty runs.

*General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 395-96 (1982) (emphasis added), *Marrs v. Rife*, 503 F. 2d 735 (6th Cir. 1974) (citing federal cases that the duty to comply with the law is non-delegable).

The nondelegation doctrine prevents defendants from simply contracting out a duty imposed on them by a federal law designed to protect consumers like Worsham, to whom the duty is owed. The TCPA created a substantive federal right modifying and extending the common law rights and remedies in telephone privacy. *C.f. Engel v. Davenport*, 271 U.S. 33, 38 (1926) (recognizing Section 6 of the federal Employers' Liability Act as "a material provision of the statutes 'modifying or extending the common law right or remedy in cases of personal injuries to railway employees' which was adopted by and incorporated in the Merchant Marine Act.").

FELA modified or extended common law rights for railway employees with personal injuries. The TCPA modified common law agency principles for the rights of consumers with respect to sellers who target consumers with telemarketing. Whether sellers can also be liable under common law agency is a separate issue, but one which does not need to be established or proven here. That is because under 47 U.S.C. § 227(c) the TCPA establishes liability for calls "by or behalf of the same entity in violation of the regulations . . .," so it does not matter whether DPI's telemarketers were formal agents of DPI, although Hound Energy was an agent

based on the close and regular contact it had with DPI, and the callers affirmatively identifying themselves as "Discount Power." *See* audio disk of calls filed with the Court[2].

**The FCC recognizes that TCPA requirements are nondelegable**

In 2000 the FCC recognized TCPA requirements as nondelegable in *In the Matter of Long Distance Direct, Inc.*, 15 FCC Rcd. 3297 at ¶ 9, n. 12 (Feb. 17, 2000), stating:

> To hold that the section does not include independent contractors would create a gaping loophole in the requirements of the Act and frustrate legislative intent. Moreover, the construction urged by LDDI is contrary to long-established principles of common law holding statutory duties to be nondelegable.

The section referred to is 47 U.S.C. § 217, which provides:

> In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

'*User*' in § 217 is defined by the official U.S. government telecommunications glossary as:

> *user*: 1. A person, organization, or other entity (including a computer or computer system), that employs the services provided by a telecommunication system, or by an information processing system, for transfer of information. (188) Note: A user functions as a source or final destination of user information, or both. *Synonym* subscriber. 2. [A] person or process accessing an AIS by direct connections (e.g. , via terminals) or indirect connections. Note: "Indirect connection" relates to persons who prepare input data or receive output that is not reviewed for content or classification by a responsible individual.

Federal Standard 1037C, Telecommunications: Glossary of Telecommunications Terms, General Services Administration (August 7, 1996). This Glossary is available online[3]. The

---

[2] DPI argued in footnote 6 and again on page 15 against the authenticity of the call recordings Worsham provided. Worsham is attaching as an Exhibit herein his revised Affidavit, to correct the inadvertently incorrect case caption in his Third Affidavit filed as ECF 276-2, and which adds three additional paragraphs 34-37 on page 7 regarding and further authenticating the call recordings, about which Worsham testified when DPI took Worsham's deposition

[3] Federal Standard 1037C was superseded in 2001 by American National Standard T1.523-2001, Telecom Glossary 2000, published by ATIS. The current version of the ATIS Telecom Glossary is available at https://www.atis.org/glossary, and is searchable. The definition of "*User*" can be found alphabetically under "U" here:

Forward states that "The use of this standard by all Federal departments and agencies is ***mandatory***." (emphasis in original). Nondelegation applies to any person (user), and not just the carrier found liable by the FCC in *Long Distance Direct, Inc.*. A copy of the FCC's *Long Distance Direct* decision is attached as an Exhibit herein.

In *Long Distance Direct, Inc*. at footnote 12 the FCC emphasized that nondelegation liability is applied routinely for a breach of a statutory duty by independent contractors:

> Employers are routinely held liable for breach of statutory duties, even where the failings are those of an independent contractor, and even where the party seeking redress is other than the government. *See Restatement* [*Second] of Torts* § 409, comment b at 371. *See also, e.g., Alva Steamship Co., Ltd. v. City of New York,* 616 F.2d 605, 609 (2d Cir. 1980) (exception to the rule of nonliability for the negligence of independent contractor is "the negligence of an independent contractor who performs a duty imposed by statute on the employer").

As the FCC noted, the Second Circuit recognizes the nondelegation doctrine:

> Ordinarily, of course, an employer is not liable for the negligence of an independent contractor, but there are several well-recognized exceptions to this rule. One of these is that an employer may remain liable for the negligence of an independent contractor who performs a duty imposed by statute on the employer.

*Alva Steamship,* 616 F.2d at 609. *Alva Steamship* added that "because the Fire Department order had the force of law the shipowners were under a non-delegable duty to see to it that the inerting procedure was performed with the safeguards mentioned in the order." *Id.* at 609-610. *State of Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 414 (D. Md. 2011), also imposed liability on principals for acts of a non-agent contractor broadcaster of robocall messages.

The nondelegation doctrine holding persons liable for the acts of their independent contractors is recognized by the Supreme Court, two federal circuit courts including the Fourth Circuit, and by the FCC explicitly with respect to the TCPA. This Court should not ignore the

---

https://glossary.atis.org/search-results/?char=U A screen shot of the definition of *User* from this federal glossary is attached as an Exhibit herein.

Supreme Court, and should formally recognizing the nondelegation doctrine and make DPI liable for its contractors' violations, in addition DPI's "by or on behalf of the same entity" liability under § 227(c)(5).

**DPI is not entitled to a good faith or safe harbor defense to its violations**

DPI's last and short one paragraph argument is that it is entitled to a safe harbor or good faith defense to its violations under 47 U.S.C. § 227(c)(5). DPI is incorrect because it has not even come close to meeting any of the requirements for the TCPA's affirmative defense. Notably, DPI completely failed to even cite, much less demonstrate, that DPI met the FCC's requirements for this defense.

The affirmative defense under 47 U.S.C. § 227(c)(5) requires "that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations." DPI's Memo. at page 18 only gave a rote repetition of this language, with no argument or explanation of its practices or procedures, how they were reasonable, or how they were effective at preventing violations.

DPI's argument fails first off because the affirmative defense it asserts requires practice and procedures that are effective. The multiple calls, and multiple violations in each call here, precludes a finding that DPI had "practices and procedures to effectively prevent telephone solicitations." The TCPA's affirmative defense is meant to apply to a person or entity that genuinely tries to comply with the law, but despite have truly effective practices procedures, caused a violation through a genuine error that somehow slipped through the cracks of these otherwise truly effective procedures. Causing multiple calls and multiple violations per call is inconsistent with truly effective policies and procedures, or having caused an isolated and genuine error. The other lawsuits against DPI that have been publically documented are additionally inconsistent with a finding of such truly effective practices and procedures.

The precise claims at issue should be noted clearly. Count 1 (and Count 4 under the Maryland TCPA) allege violations for failing to honor the national DNC list registry, which Worsham's number was indisputably on at all times relevant to this suit. *See* Worsham Affidavit, ECF 276-2 at ¶ 2. This DNC list violation claim is different from a claim under 47 C.F.R. § 64.1200(d)(3) would be for DPI having failed to record Worsham's do not call request and honoring that request within 30 days, or a claim under 47 C.F.R. §64.1200(d)(6) for DPI failing to honor that same request for 5 years. Liability under Counts 1 and 4 is not precluded even if DPI had recorded Worsham's number on its own internal DNC list. Therefore DPI's mere maintenance of an internal DNC list, or placing Worsham's number on it, does not create an affirmative defense.

To have met the affirmative defense requirements for Counts 1 and 4, even if DPI had recorded Worsham's DNC request, DPI would have to have successfully communicated that DNC request to all of its involved telemarketers for that request to be effective. DPI has failed to demonstrate doing this, or even attempting to.

Further, DPI's telemarketer Hound Energy, LLC would have to have further and successfully communicated Worsham's number being on DPI's internal DNC list to its subsequent agent, which here was the Pakistani company doing business as Xtrasource or Xtra Source BPO. Even further still, the Pakistani company would have had to honor Worsham's number being on DPI's internal DNC list. DPI failed to demonstrate any of this.

Similarly, and notably, DPI failed to even cite, much less demonstrate compliance with, the FCC's requirements for a defense to a claim for violating the national DNC list under 47 C.F.R. § 64.1200(c)(2) as in Counts 1 and 4. The relevant FCC requirement provides that: "Any person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) will not be liable for violating this requirement if:

(I) It can demonstrate that the violation is the result of error and that as part of its routine business practice, it meets the following standards:

(A) **Written procedures**. It has established and implemented written procedures to comply with the national do-not-call rules;

(B) **Training of personnel.** It has trained its personnel, and any entity assisting in its compliance, in procedures established pursuant to the national do-not-call rules;

(C) **Recording.** It has maintained and recorded a list of telephone numbers that the seller may not contact;

(D) **Accessing the national do-not-call database**. It uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules, employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintains records documenting this process.

(E) **Purchasing the national do-not-call database.** It uses a process to ensure that it does not sell, rent, lease, purchase or use the national do-not-call database, or any part thereof, for any purpose except compliance with this section and any such state or federal law to prevent telephone solicitations to telephone numbers registered on the national database. It purchases access to the relevant do-not-call data from the administrator of the national database and does not participate in any arrangement to share the cost of accessing the national database, including any arrangement with telemarketers who may not divide the costs to access the national database among various client sellers;"

47 C.F.R. § 64.1200(c)(2)(i)(A-E).

Since DPI's Motion did not even cite this FCC regulation, it naturally failed to even argue compliance with it, much less demonstrate compliance. It should be noted the DPI failed to even provide Worsham with a copy of its Do Not Call policy in discovery when Worsham requested it, and also that DPI has tried to distance itself from Xtrasource aka Xtra Source BPI which did the actual calling, as well as to some extent DPI's direct telemarketing agent Hound Energy, both of whom share compliance responsibilities with DPI under these FCC provisions. *See e.g.* 47 C.F.R. § 64.1200(c)(2)(i)(B), requiring the training of any personnel for "<u>any entity assisting in its compliance</u>, in procedures established pursuant to the

national do-not-call rules." (Emphasis added). DPI has tried to act as if Xtrasource/Xtra Source BPO does not exist, and that DPI has little or no knowledge of how it operates, thereby precluding demonstrating compliance by Xtrasource.

DPI's affirmative defense fundamentally fails because DPI has failed to acknowledge that the calls were made to Worsham on its behalf by Xtrasource as the subpoenaed phone records prove. Such a position of complete denial is inconsistent with the TCPA's affirmative defense. DPI must first take ownership of the calls, and then explain how they were made despite and notwithstanding its supposedly adequate practices and procedures. Because DPI denies responsibility for all of the calls, it can't even begin to mount an affirmative defense. DPI's dozens of pages of denial of responsibility can not be simply followed by a leapfrog to a rote and cursory parroting of the language for an affirmative defense under the TCPA, and expect that such a defense will be recognized without any support for it.

WHEREFORE the Court should deny Defendant's Motion for Summary Judgment with prejudice. Plaintiff requests a hearing on Defendant's Motion.

Respectfully submitted,

/s/ Michael C. Worsham

Michael C. Worsham, Plaintiff, *Pro Se*
1916 Cosner Road
Forest Hill, Maryland 21050
410-557-6192
michael @ magicmichael.net

**CERTIFICATE OF SERVICE**

On July 1, 2022 this document and attached Exhibits were filed for electronic service through the Court's ECF system on counsel and parties of record.

/s/ Michael C. Worsham

Michael C. Worsham