IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL C. WORSHAM, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-20-0008 |
| DISCOUNT POWER, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This is the latest in a series of cases filed by Plaintiff Michael C. Worsham ("Worsham") against corporations alleged to have violated state and federal telephone consumer protection laws.[1] Worsham, a former attorney appearing *pro se*, alleges that Defendant Discount Power, Inc. ("Discount Power") violated the federal Telephone Consumer Protection Act ("TCPA") and Maryland Telephone Consumer Protection Act ("MTCPA") by placing seven calls to his landline during a five-day period in November 2019. (Am. Compl. ¶ 15, ECF No. 54.) Following this Court's partial grant of Discount Power's motion to dismiss (ECF Nos. 75,

---

[1] Worsham has litigated several TCPA cases before this Court, and other federal district courts. *See, e.g.*, *Worsham v. Direct Energy Servs., LLC*, No. SAG-20-00193, 2021 WL 948819 (D. Md. Mar. 12, 2021); *Worsham v. Travel Options, Inc., et al.*, No. JKB-14-2749, 2016 WL 4592373 (D. Md. Sep. 2, 2016); *Worsham v. Acct. Receivables Mgmt., Inc.*, No. JKB-10-3051, 2011 WL 5873107 (D. Md. Nov. 22, 2011); *Worsham v. TSS Consulting Grp.*, No. 6:18-cv-1692-Orl-37LRH, 2019 WL 7482221 (M.D. Fla. 2019).

Worsham has also litigated numerous TCPA cases before the Maryland state courts. *See, e.g.*, *Worsham v. LifeStation, Inc.*, No. 661, Sept. Term, 2020, 2021 WL 5358876 (Md. Ct. Spec. App. 2021); *Worsham v. Carney*, No. 2137, Sept. Term, 2018, 2021 WL 3508659 (Md. Ct. Spec. App. 2021); *Worsham v. Friends of Marilyn Mosby*, No. 2134, Sept. Term, 2018, 2020 WL 4000879 (Md. Ct. Spec. App. 2020); *Worsham v. MacGregor*, No. 00236, Sept. Term, 2016, 2018 WL 3868948 (Md. Ct. Spec. App. 2018); *Worsham v. Ehrlich*, 181 Md. App. 711 (2008); *Worsham v. Nationwide Ins. Co.*, 138 Md. App. 487 (2001).

137), four counts of Worsham's Amended Complaint remain operative: In Counts 1 and 5, Worsham alleges that Discount Power placed calls to his residential landline, which is listed on the National Do-Not-Call List. (Am. Compl. ¶¶ 68, 74.) In Counts 2 and 6, Worsham alleges that Discount Power violated 47 C.F.R. § 64.1200(d)(4) by failing to provide requisite identifying information for each of these calls. (*Id.* ¶¶ 69–70, 75.)

Currently pending are the parties' dispositive cross-motions for summary judgment. (ECF Nos. 276, 277.) The parties largely dispense with the specifics of each Count and turn their attention to a fundamental issue: Whether Discount Power may be held directly or vicariously liable for the seven telemarketing calls at all. After extensive discovery, Worsham has failed to produce evidence of an agency relationship between Discount Power and its third-party telemarketing vendors, who are properly characterized as independent contractors. This distinction entitles Discount Power to judgment on all counts as a matter of law. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Worsham's Motion for Summary Judgment (ECF No. 276) is hereby **DENIED,** and Discount Power's Motion for Summary Judgment (ECF No. 277) is hereby **GRANTED.**

## BACKGROUND

Plaintiff Michael Worsham ("Worsham") is a former attorney who has resided in Forest Hill, Maryland, since 1993. (Worsham Affid. ¶ 1, ECF No. 276-2.) Worsham maintains a landline at his home with the number (410) 692-2749 (the "Landline") that was placed on the Federal Communication Commission ("FCC") National Do-Not-Call List in July 2006. (*Id.* ¶ 2.) Defendant Discount Power, Inc. ("Discount Power") is a Connecticut corporation

with its principal place of business in Shelton, Connecticut. (Flood Decl. ¶ 3, ECF No. 277-4.) Discount Power contracts with third-party vendors, including Hound Energy, LLC, and AGR Group, LLC, to advertise energy service discounts by calling prospective consumers. (*Id.* ¶¶ 4–5; Discount Power Interrog. Resp. No. 18, ECF No. 105-1.) According to Discount Power's Regulatory and Licensing Administrator Kenneth Flood, Discount Power exercises no control over these vendors' telemarketing activities, or the hiring, management, and termination of their employees. (Flood Decl. ¶¶ 6–7.)

Worsham alleges that Discount Power placed seven calls to his Landline in a five-day timespan during November 2019 to offer discounts and rebates on electrical bills. (Am. Compl. ¶ 15; Worsham Affid. ¶¶ 5, 9–16.) As summarized in Worsham's Third Affidavit, these calls include the following:

| No. | Date of Call | Time of Call | Caller ID Number | Caller ID Name |
|---|---|---|---|---|
| 1 | Nov. 11, 2019 | 10:50 AM | 201-285-8284 | Bayonne NJ |
| 2 | Nov. 11, 2019 | 5:37 PM | 410-692-7576 | Jarretsvl MD |
| 3 | Nov. 12, 2019 | 1:49 PM | 201-285-8284 | Bayonne NJ |
| 4 | Nov. 14, 2019 | 1:23 PM | 201-285-8284 | SPAM? Bayonne N |
| 5 | Nov. 15, 2019 | 12:01 PM | 201-285-8284 | SPAM? Bayonne N |
| 6 | Nov. 15, 2019 | 1:09 PM | 410-692-8898 | Jarrettsvl MD |
| 7 | Nov. 15, 2019 | 2:37 PM | 201-285-8284 | SPAM? Bayonne N |

(Am. Compl. ¶ 15; Worsham Affid. ¶ 5.)

Worsham did not answer the first call. However, he alleges that Calls 2 through 5 included prerecorded solicitations with the following robocall messages:

> <u>Call 2</u>: "Hello. This is an apology call from your electric utility. You got overcharged by your third party supplier. You will be receiving a rebate check along with a 30% discount on your electric and gas bill. Please press one to get your rebate check."

3

> Calls 3-5: "Hello thank you for being a valued customer of BGE, also known as Baltimore Gas and Electric. The following is an important update regarding your account. Starting this month all current customers who have not missed any payments in the past 6 months will now be eligible for a discount for up to 30% off of their monthly bill. If you would like to check your eligibility, simply press one on your phone now."
>
> Call 6: "Hello. This is an apology call from your electric utility. You got overcharged by your third party supplier. You will be receiving a $100 bill adjustment, along with a 40% discount on your electric and gas bill. Please press 1 to adjust $100 in your bill. Please press 1 now."

(Am. Compl. ¶ 15; Worsham Affid. ¶¶ 9–16, 18.) Worsham also claims that he spoke to a telemarketing agent named "Joselyn" during calls 3, 4, 5, and 7. (Worsham Affid. ¶¶ 11–15.) According to Worsham, "Joselyn" identified herself as a representative of Discount Power in these calls, and provided Discount Power's customer service hotline. (*Id.* ¶¶ 13–16.)

Worsham filed his initial 17-Count Complaint in the Circuit Court of Harford County, Maryland, on November 25, 2019, alleging 4 violations of the federal Telephone Consumer Protection Act ("TCPA") (Counts 1–4), and 13 violations of the Maryland Telephone Consumer Protection Act ("MTCPA") (Counts 5–17). (*See* Compl. ¶¶ 72, 76, ECF No. 3; Harford County Compl. 14, ECF No. 1-2.) Following removal to this Court and dismissal without prejudice, Worsham filed the operative Amended Complaint on May 13, 2021, seeking $77,000–$40,500 in statutory damages for the alleged TCPA violations, and $36,500 in statutory damages for the alleged MTCPA violations. (Am. Compl. ¶¶ 91, 95.) Discount Power filed a second motion to dismiss (ECF No. 64), and this Court granted that motion as to Counts 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17, dismissing those Counts with prejudice.

4

(7/29/21 Mem. Ord. 1–2, ECF No. 75.)[2] Accordingly, Worsham's only surviving causes of action are Counts 1 and 5, relating to the presence of the Landline on the FCC's National Do-Not-Call List; and Counts 2 and 6, relating to Discount Power's failure to provide identifying information as required by FCC regulations. (*Id.* at 1–2, 7–8; Am. Compl. ¶¶ 68–70, 74–75.)

Through a lengthy discovery process, Worsham served multiple third-party subpoenas to trace the seven telemarketing calls to their point of origin, attempting to connect the dots from caller to carrier, and ultimately to Discount Power. (Worsham Mem. Supp. Summ J. 4, ECF No. 276-1.) On April 27, 2020, and September 23, 2021, Worsham subpoenaed his primary phone carrier, Armstrong Telecommunications, which disclosed that Inteliquent, Inc. was responsible for five calls, and Peerless Network, Inc., was responsible for two calls. (Armstrong Subpoenas, ECF Nos. 27-1, 102; Reed Smith Resp. Letter, ECF No. 276-3; List of Calls, ECF No. 123-1.) On November 3, 2021, Worsham subpoenaed each of these carriers for their call records. (Subpoena Request, ECF No. 123; Peerless Subpoena, ECF No. 123-2; Inteliquent Subpoena, ECF No. 123-4.) Inteliquent identified four carriers who provided services for these calls: Comcast, Bandwidth.com CLEC LLC, 382.com, and 200 Networks. (Inteliquent Call Records 2–3, ECF No. 155 *SEALED*.) Peerless identified one carrier: Contact Center Specialists, LLC. (Worsham Affid. ¶ 31; *see also* Peerless Call Records, ECF No. 160-2; Phipps Affid., ECF No. 160-1.)

---

[2] Initially, Counts 2 and 6 were also dismissed with prejudice. (*See* 7/29/21 Mem. Ord. 1–2, 7–8.) However, this Court granted Worsham's Motion to Reconsider the dismissal of those counts in light of intervening authority recognizing that 47 C.F.R. § 64.1200(d) provides a private right of action. *See Worsham v. Lifestation, Inc.*, No. 661, Sept. Term, 2020, 2021 WL 5358876, at *15 (Md. Ct. Spec. App. Nov. 17, 2021). (12/01/21 Mem. Ord. 6–10, ECF No. 137.)

After several extensions, discovery closed on April 1, 2022. (3/2/22 Letter Ord. 3, ECF No. 228.) However, six months earlier, on November 16, 2021, Worsham served a subpoena on Contact Center Specialists, LLC, which was later identified by Peerless as its carrier. (CCS Supboena, ECF No. 133.) Contact Center revealed that five calls were placed by Xtrasource BPO to the Landline on the same dates as Calls # 1, 3, 4, 5, and 7. (CCS Email, ECF Nos. 233-5, 276-4.) Additionally, in an interrogatory response, Discount Power acknowledged that "Xtrasource-Hound Energy, LLC and AGR Group, LLC provided telemarketing services to Discount Power in Maryland in during the period of the alleged calls to Plaintiff on November 11, 12, 14 and 15, 2019." (Discount Power's Suppl. Resp. to Pl.'s Interrogs. No. 5, ECF No. 109-1.) Worsham contends that this evidence completes a chain between Armstrong, Peerless, Contact Center, Hound Energy, and Discount Power. (Worsham Mem. Supp. 4.)

However, Discount Power notes that "[t]here is not one scintilla of evidence that [it] initiated any of the seven calls." (Discount Power Mem. Supp. Summ. J. 1, ECF No. 277-1.) Discount Power's internal investigation revealed that none of its third-party dialers have any records of calls made to the Landline, (Flood Decl. ¶¶ 8–9), none of its dialers have employees by the names of Jocelyn or Joselyn, (*id.* ¶ 10), and none of its subcontractors placed the calls at issue in this case, (*id.* at ¶ 11). Discount Power's internal records do not indicate any calls placed on this date, DPI Records 5–10, ECF No. 277-8), Discount Power attested in an interrogatory response that it did not initiate the calls, (Discount Power's Suppl. Resp. to Pl.'s Interrogs. No. 6), and AGR Group and Hound Energy offered sworn declarations and copies of their call logs indicating that they have no records of calls to the Landline during the relevant period. (*See* Hound Energy/Johnson Decl. ¶¶ 5-7, ECF No. 277-6 ("Hound Energy has no

6

records of any calls to the telephone number (410) 692-2749."); AGR/Rieke Decl. ¶ 6, ECF No. 148-2 ("AGR has no records of any calls to the telephone number (410) 692-2749.")); AGR Call Logs, ECF No. 148-3; Letter Ord. Denying Mot. Compel. 1, ECF No. 178; AGR Opp. 1–5, ECF No. 148.) Discount Power further notes that it added Worsham's number to its internal do-not-call list on March 28, 2018, and that the calls do not match Discount Power's marketing script. (Discount Power Mem. Supp. 6; DPI Policies 16–17.)

**STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences "in the light most favorable to the nonmoving party." *Libertarian Party of Va.*, 718

F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that a trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866–68 (2014).

## ANALYSIS

Worsham contends that Discount Power violated assorted provisions of the TCPA and the MTCPA by placing seven telemarketing calls to his Landline during November 2019. (Am. Compl. ¶¶ 15.)[3] The central purpose of these statutes is to protect consumers against "the proliferation of intrusive, nuisance [telemarketing] calls to their homes." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (quoting TCPA § 2, ¶ 5, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings)) (alteration in original). In Counts 1 and

---

[3] Discount Power expends significant effort arguing that the Landline is a business number, rather than a residential number. (*See, e.g.*, Discount Power Mem. Supp. 15–17; Discount Power Resp. Opp. 5–7, ECF No. 285.) The FCC has clarified that "the National Do Not Call applies [only] to 'residential subscribers' and does not preclude calls to businesses." 23 FCC Rcd. 9779, 9785 (Jun. 17, 2008); *see* 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(c)(2) (prohibiting calls to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry"); 16 C.F.R. § 310.4(b)(7) (exempting from Do Not Call protections any "[t]elephone calls between a telemarketer and any business").

Discount Power argues that the Landline was published for years as the number for "the Law Office of Michael C. Worsham," and was listed as such on public docket sheets in several previous cases. (*See* Discount Power Mem. Supp. 16; Docket Sheets, ECF Nos. 277-2, 277-3.) Worsham counters that he has not practiced law since 2014, rendering this listing flatly incorrect. (Worsham Resp. Opp. 2–3, ECF No. 286.) He also argues that the docket sheets Discount Power relies on are erroneous and have since been corrected. (*Id.*) In any event, it is unnecessary for this Court to address this issue to resolve the pending motions for summary judgment.

5, Worsham alleges that the calls violated TCPA protections afforded to residential numbers on the National Do-Not-Call List. *See* 47 U.S.C. § 227(c). (Am. Compl. ¶¶ 68, 74.) In Counts 2 and 6, Worsham alleges that Discount Power violated 47 C.F.R. § 64.1200(d)(4) by failing to provide identifying information for each of the calls. (*Id.* ¶¶ 69–70, 75.)

Before addressing the specifics of these counts, this Court faces a more fundamental question: whether Discount Power can be held directly or vicariously liable for any of the calls at issue in this litigation. Worsham argues that his call-trace process produced enough evidence for a jury to establish a continuous path between Discount Power, Xtrasource-Hound Energy, Contact Center, Peerless, and the calls at issue in this case:

> The undisputed facts are that Calls #1, 3, 4, 5 and 7, which transmitted the same 201-285-8284 number on Caller ID, were made using the carrier services of CCS by Xtrasource/Xtra Source BPO, a sub-agent calling for and on behalf of Hound Energy, LLC, who was hired by and was calling for and on behalf of Defendant [Discount Power].

(Worsham Mem. Supp. 6.) Even assuming a jury could find Hound Energy placed these calls, a TCPA litigant must do more than connect the dots between the putative calls and the defendant's third-party vendors. Rather, "vicarious liability under the TCPA is governed by the federal common law of agency." *Hodgin v. UTC Fire & Sec. Americas Corp., Inc.*, 885 F.3d 243, 252 (4th Cir. 2018). To overcome Discount Power's motion for summary judgment, Worsham must therefore produce evidence sufficient for a jury to find an agency relationship between Discount Power and Hound Energy. He has failed to do so.

The Federal Communications Commission (the "FCC") has authorized vicarious liability for violations of the TCPA. *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013). As Judge Blake of this Court recently observed, "[v]icarious liability plays

9

an essential role in enforcing the TCPA," as "[s]ellers are 'in the best position to monitor and police TCPA compliance by third-party telemarketers,' and vicarious liability incentivizes companies to keep their telemarketers in compliance with the law." *Bradley v. DentalPlans.com*, ___ F. Supp. 3d ___, 2022 WL 2973979, at *8 (D. Md. 2022) (Blake, J.) (quoting *Dish Network*, 28 FCC Rcd. at 6588). "The TCPA would no longer offer consumers relief from intrusive robocalls if sellers could 'avoid potential liability by outsourcing [their] telemarketing activities to unsupervised third parties,' who are often 'judgment proof, unidentifiable, or located outside the United States.'" *Id.* (quoting *Dish Network*, 28 FCC Rcd. at 6588); *accord Hossfield v. Gov't Employees Ins. Co.*, 88 F. Supp. 3d 504, 510 (D. Md. 2015) ("[A] seller cannot avoid liability simply by delegating placing the call to a third-party.").

Nevertheless, vicarious liability under the TCPA "is not unlimited liability; sellers are not strictly liable for all actions taken by their telemarketers." *Bradley*, 2022 WL 2973979, at *8. Rather, a "defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd*, 577 U.S. 153 (2016); *Hodgin v. UTC Fire & Sec. Am. Corp., Inc.*, 885 F.3d 243, 252 (4th Cir. 2018); *accord Henderson v. United Student Aid Funds*, 918 F.3d 1068, 1072 (9th Cir. 2019) ("A plaintiff . . . must show that there is an agency relationship between a defendant and a third-party caller for there to be vicarious liability for TCPA violations."). Accordingly, "vicarious liability under the TCPA is governed by the federal common law of agency," under which an agency relationship may be established by way of (1) actual authority; (2) apparent authority; or (3) ratification. *Hodgin*, 885 F.3d at 252 (quoting *Dish Network*, 28 FCC Rcd. at 2584).

In this case, Worsham arguably alleges the existence of an actual agency relationship. Under traditional vicarious liability rules, principals are vicariously liable for the tortious acts of their agents within the scope of their authority. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 660 (4th Cir. 2019) (citing Restatement (Third) of Agency § 1.01). Three traditional characteristics are relevant to the existence of an agency relationship: "(1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent." *Danner v. Int'l Freight Sys. Of Wa., LLC*, 855 F. Supp. 2d 433, 454 (D. Md. 2012) (quoting *Green v. H & R Block, Inc.*, 355 Md. 488, 503 (1999)). Chief among them, "the 'essential element' of an agency relationship is the principal's control over the agent's actions." *Wilson v. PL Phase One Operations L.P.*, 422 F. Supp. 3d 971, 980 (D. Md. 2019) (quoting Restatement (Third) of agency § 1.01 cmt. f). "In the TCPA context, courts characterize the control necessary to establish agency as whether the principal 'controlled or had the right to control [the agent] and, more specifically, the manner and means of the [telecommunications] campaign they conducted.'" *Id.* at 980. "'Generally, the existence and scope of agency relationships are factual matters,' and are therefore often appropriately left to the jury." *Krakauer*, 925 F.3d at 660 (quoting *Metco Prods., Inc., Div. of Case Mfg. Co. v. NLRB*, 884 F.2d 156, 159 (4th Cir. 1989)).

In *Bradley v. DentalPlans.com*, ___ F. Supp. 3d ___, 2022 WL 2973979 (D. Md. 2022), plaintiff Deborah Bradley brought TCPA claims against defendant Cigna Health and Life Insurance Co. ("Cigna") based on calls she received from Maryland-based telemarketer DentalPlans.com. 2022 WL 2973979, at *1 (Blake, J.). Cigna, a Connecticut corporation, moved to dismiss Bradley's claims for lack of personal jurisdiction, arguing that there was no

11

nexus between the plaintiff's suit and Cigna's contacts with Maryland because DentalPlans was an independent contractor. *Id.* at \*2. Recognizing that vicarious liability exists under the TCPA, this Court denied Cigna's motion, concluding that "Bradley has made a prima facie showing of an agency relationship based on actual authority." *Id.* at \*8. Judge Blake reasoned that "[Bradley's] amended complaint provides a litany of specific allegations regarding Cigna's ability to control DentalPlans' marketing campaign," including an agreement with notice and approval requirements, powers of immediate revocation, and extensive reporting, inspection, and quality control obligations. *Id.* at \*\*8–10.

Comparatively, in *Worsham v. Direct Energy Services, LLC*, No. SAG-20-00193, 2021 WL 948819 (D. Md. Mar. 12, 2021), Worsham brought near-identical TCPA claims against Direct Energy Services, LLC ("Direct Energy"), an energy service provider, based on 27 telemarketing calls he received between October 2018 and January 2019. 2021 WL 948819, at \*1. Direct Energy, like Discount Power, marketed to Maryland consumers through third-party vendors using independent contractor agreements that mandate TCPA compliance. *Id.* at \*2.[4] Direct Energy moved for summary judgment, and this Court granted its motion. *Id.* at \*1. Rejecting Worsham's assertion that Direct Energy's duty to comply with the TCPA is non-delegable, *id.* at \*4, this Court concluded that "Worsham has not proffered evidence that would allow a reasonable trier of fact to conclude that the unknown caller or callers were acting as Direct Energy's agents." *Id.* at \*5. As Direct Energy's contractors retained the rights to

---

[4] *Direct Energy* followed a similar pattern in discovery: The defendant provided Worsham contact information for its third-party vendors and attempted through internal investigation to identify which vendor had placed the calls. *Id.* Neither party could identify the identity of the callers. *Id.*

12

"control [their] employees" and "control [their] conduct," the Court reasoned that "the degree of control needed for an agency relationship is lacking." *Id.* at *6. As the Court noted:

> Direct Energy's standard agreement provided that the caller was an independent contractor, not an agent. The agreement allows the vendor to select, supervise, discipline, and train its employees, and allows the vendor to retain authority over the means, manner and methods of performing its responsibilities, while reserving for Direct Energy some role in the preparation of telemarketing scripts and the right to receive detailed reports of the vendor's activities. Given the broad control the vendors retain over their own conduct, they appear properly classified as independent contractors. Direct Energy thus cannot be held vicariously liable for the calls under a principal-agent relationship, even assuming one or more of the calls was made by one of its telemarketing vendors.

*Id.* at *6 (internal citation omitted). Although the callers had stated they were "calling on behalf of Direct Energy" and provided a publicly available customer service number, these facts were insufficient to establish a traditional agency relationship. *Id.* at *6.

Echoing *Direct Energy*, "Worsham maintains that the TCPA essentially imposes strict vicarious liability on [Discount Power], because its duty to comply with the statute is non-delegable." *Id.* at *5. "[A] nondelegable duty is an affirmative obligation to ensure the protection of the person to whom the duty runs." *Meyer v. Holley*, 537 U.S. 280, 290 (2003). "The duty is not discharged by using care in delegating it to an independent contractor." *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 395 (1982). "Consequently, the duty creates an exception to the common-law rule that a principal normally will not be held liable for the tortious conduct of an independent contractor." *Id.* at 395–96. This theory was rejected in *Direct Energy* and is equally unavailing here. The FCC and the Fourth Circuit have recognized that "vicarious liability under the TCPA is governed by the federal common law of agency." *Hodgin*, 885 F.3d at 252; *Dish Network*, 28 FCC Rcd. at 6584–86 (declining to extend liability

"beyond agency principles to subject the seller to vicarious liability . . . [anytime] the call is made simply to aid or benefit the seller—even if agency principles would not impose vicarious liability on the seller for the call."). Additionally, district courts evaluating the TCPA have routinely rejected the assertion that TCPA duties are non-delegable. *See, e.g.*, *Direct Energy*, 2021 WL 2451641, at *4; *Zhu v. DISH Network, LLC*, 808 F. Supp. 2d 815, 818–19 (E.D. Va. 2011); *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 772 (N.D. Ill. 2014) ("Nothing in the TCPA supports imposing liability for third-party telemarketing calls under such a broad theory."). Worsham fails to cite any cases reaching a contrary conclusion.

As his non-delegable duty argument is inapposite, Worsham's claims do not survive summary judgment. Although Worsham's subpoena call-trace process has generated evidence that Hound Energy may have been responsible for the seven calls at issue, the record in this case suffers from the same deficiency that was found dispositive in *Direct Energy*: "Worsham has not proffered evidence that would allow a reasonable trier of fact to conclude that the unknown caller or callers were acting as [Discount Power's] agents." 2021 WL 948819, at *5. Accordingly, while "'the existence and scope of agency relationships are factual matters,' and are therefore often appropriately left to the jury," *Krakauer*, 925 F.3d at 660 (citation omitted), Discount Power is entitled to judgment as a matter of law.

As an initial matter, it is questionable that a reasonable jury could find that Discount Power initiated any of the seven calls. (Discount Power Mem. Supp. 4–5.) Discount Power has offered undisputed evidence that Worsham's number is on its internal Do-Not-Call registry, that its internal records do not indicate any calls to the Landline on this date, and that Discount Power's call script does not match the alleged calls. (*Id.* at 6; DPI Policies 5-10, 16-

17.) Many of the calls did not mention Discount Power, leaving it entirely speculative that these calls may be attributed to this defendant rather than another company engaged in telemarketing efforts. *Cf. Direct Energy*, 2021 WL 948819, at \*3 (reaching similar conclusion). Moreover, sworn declarations by Discount Power, AGR Group, and Hound Energy attest that Discount Power did not call Worsham's number at any point—and that Discount Power does not place calls directly. (*See, e.g.*, Flood Decl. ¶¶ 4, 9, ECF No. 277-4 ("DPI does not make or initiate calls to current or potential customers offering discounts or rebates . . . ."); AGR/Rieke Decl. ¶¶ 4–6 ("AGR has no records of any calls to the telephone number (410) 692-2749."); AGR Call Logs, ECF No. 148-3; Hound Energy/Johnson Decl. ¶¶ 5–7 ("Hound Energy has no records of any calls to the telephone number (410) 692-2749.").[5]

Even if a jury could find that Hound Energy was calling on Discount Power's behalf, the defendant's telemarketing agreements with Hound Energy and AGR Group, LLC create an independent contractor relationship.[6] Both agreements expressly provide that the third-party telemarketers retain control over their activities, and expressly *preclude* Discount Power from controlling "the manner and means of the [telemarketing] campaign they conducted." *PL Phase One Operations L.P.*, 422 F. Supp. 3d at 980. (*See* Hound Ag't § 2.04, ECF No. 293

---

[5] Worsham argues that Discount Power cannot rely on the Hound Energy Declaration (ECF No. 277-6), as Hound Energy is the subject of a pending civil contempt certification for failing to appear at a deposition. (Worsham Resp. Opp. 1–2; *see* Mem. Ord. Cert. Civil Contempt 6–7, ECF No. 255.) However, the proposed civil contempt sanction would not preclude Hound Energy from submitting evidence or testifying in this case. In any event, Worsham's request for a civil contempt order shall be denied by separate order, as the record reflects that Worsham repeatedly failed to properly serve Hound Energy, and further discovery from Hound Energy would be cumulative and have no impact on this decision.

[6] Discount Power's telemarketing agreements were preliminarily filed under seal pursuant to the parties' confidentiality agreement and are subject to a pending Motion to Seal (ECF No. 292). Although this Court **GRANTS** this motion and maintains these documents under seal, this Court shall reference these agreements as necessary for the limited purpose of this opinion.

*SEALED* ("[Discount Power] shall not exercise any control over any of [Hound Energy's] employees, agents and contractors . . . all of whom are entirely under the control of Broker."); AGR Ag't § 18, ECF No. 294 *SEALED* ("Discount Power shall not have or exercise any control or direction over the Services performed for AGR and shall not in any way supervise or control its activities.").) Likewise, these agreements disclaimed any authority on the part of the telemarketers to "alter the legal relations of the principal." *Danner*, 855 F. Supp. 2d at 454. (*See* Hound Ag't § 2.04 ("[Hound Energy] shall have no right or authority to incur, assume or create in writing or otherwise, any obligation on the part of [Discount Power]. [Hound Energy] shall not have any authority to obtain or pledge the credit of [Discount Power].").) Absent evidence of such authority, two of the traditional characteristics of an agency relationship are missing. *Danner*, 855 F. Supp. 2d at 454. At best, Hound Energy and AGR were responsible for independently soliciting customers for Discount Power, not for "act[ing] on the principal's behalf and subject to the principal's control." *Krakauer*, 925 F.3d at 659–60 (quoting Restatement (Third) of Agency § 1.01).

Worsham fails to generate a dispute of material fact on this issue. He offers no evidence that Discount Power initiated the calls at issue, or that Discount Power exercised a greater level of control over its subcontractors than the language of these agreements might suggest. He fails entirely to identify the who actually initiated the seven telemarketing calls at issue, and he offers no evidence that Discount Power ratified the calls through knowledge and inaction. Worsham asserts in his affidavit that "Joselyn" stated that she was calling on Discount Power's behalf and eventually offered Discount Power's public-facing customer service number. (Worsham Affid. ¶ 14.). *Cf. Direct Energy*, 2021 WL 948819, at *6 (addressing identical claim).

This evidence is insufficient to sustain Worsham's claims under any applicable agency theory, as it is the principal's manifestations, not the agent's, that are determinative under agency law. *Sing Fuels Pte Ltd. v. M/V Lila Shanghai*, 39 F.4th 263, 277 (4th Cir. 2022); *Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 230 (4th Cir. 1996) ("[As] an agent cannot create his own authority to represent a principal, it follows that an agent's statements that he has such authority cannot, without more, entitle a third party to rely on his agency. An agent's authority must be conferred by some manifestation by the *principal* that the agent is authorized to act on the principal's behalf."); *accord Direct Energy Servs.*, 2021 WL 948819, at *6 ("[T]he mere fact that a dealer uses a supplier's name does not render it an agent of the supplier, just as every bar which advertises that they sell a particular brand of beer is not an agent of the brewery which they advertise." (quoting *In re: Monitronics Int'l, Inc.*, 223 F. Supp. 3d 514, 527–28 (N.D. W.Va. 2016))). Although relevant, a caller's assertion that she represented Discount Power is insufficient standing alone to establish a principal-agent relationship under any applicable agency law theory.

At bottom, after an extensive discovery process and lengthy litigation, the undisputed record reflects that Hound Energy, LLC, and AGR Group, LLC, retained full control over their employees and the performance of their contractual duties. Worsham fails to adduce any evidence on which a reasonable jury could find that Discount Power "had the right to control" these vendors' telemarketing campaigns. *PL Phase One Operations L.P.*, 422 F. Supp. 3d at 980. Absent such evidence, Worsham cannot establish the "essential element" of an agency relationship, *id.*, and Hound Energy, LLC, and AGR Group, LLC, are properly characterized as independent contractors under traditional principles of agency law. *Direct Energy*, 2021 WL 948819, at *6 ("Where, as here, the parties' agreement gives the telemarketing entity the ability

to 'control [its] employees' as well as 'the right to control [its] conduct,' the degree of control needed for an agency relationship is lacking."). As these third-party callers are independent contractors, "[Discount Power] thus cannot be held vicariously liable for the calls under a principal-agent relationship, even assuming one or more of the calls was made by one of its telemarketing vendors." *Id.* at *6. Accordingly, it is unnecessary to reach the parties' arguments on each count of the Amended Complaint, and Discount Power is entitled to judgment as a matter of law.[7]

## CONCLUSION

As Worsham fails to generate evidence sufficient for a reasonable jury to find that an agency relationship existed between Discount Power and Hound Energy, Discount Power is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Accordingly, Defendant Discount Power, Inc.'s Motion for Summary Judgment (ECF No. 277) is hereby **GRANTED**, and Plaintiff Michael Worsham's Motion for Summary Judgment (ECF No. 276), is hereby **DENIED.** Judgment shall be entered in favor of the defendant on all remaining Counts.

A separate order follows.

Date: August 4, 2022 _____/s/_____
Richard D. Bennett
United States Senior District Judge

---

[7] In the alternative, Discount Power argues that it is entitled to a statutory good faith defense, offering evidence that it has implemented an internal do-not-call list and a written compliance policy governing employees and independent contractors. (Discount Power Repl. Supp. Summ. J. 8–9, ECF No. 291.) *See* 47 U.S.C. § 227(c)(5) (providing an affirmative defense where "the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations"); 47 C.F.R. § 64.1200(c)(2)(i) (articulating requirements for this defense). Worsham argues that a jury could find Discount Power's policies to be ineffective in light of the calls that he received in violation of the TCPA. (Worsham Resp. Opp. 10–11.) As summary judgment is warranted on the question of agency alone, it is unnecessary to resolve this issue.